MARÍA LUISA ROSADO FELICIANO y BERTA FELICIANO CRESPO, demandantes y recurridas, *v.* SUPERMERCADO MR. SPECIAL ET AL., demandados y recurrentes.

*Número:* RE-94-53          *Resuelto:* 24 de enero de 1996

*Luis M. Polanco Ortiz,* abogado de la parte recurrente; *Enrique Alcaraz Micheli,* abogado de la parte recurrida.

## SENTENCIA

Comparece ante nos la parte demandada recurrente mediante un recurso de revisión para cuestionar, en síntesis, la apreciación de la prueba que realizara el Tribunal Superior, Sala de Mayagüez (Hon. Juan Camacho Fabre, Juez), en el caso de epígrafe, al declarar con lugar una demanda por daños y perjuicios instada en su contra. Luego de un examen objetivo de los autos del caso, así como de la exposición narrativa de la prueba que obra ante nos, se modifica la sentencia recurrida con los únicos fines de reducir la cuantía concedida a la codemandante Sra. Berta Feliciano Crespo y de eliminar las partidas concedidas por honorarios de abogado e intereses por temeridad. Los hechos del caso se exponen a continuación.

### I

El 15 de junio de 1991, la Sra. María Luisa Rosado Feliciano visitó el Supermercado Mr. Special con el propósito de hacer unas compras. Cuando caminaba por el pasillo en donde se encontraban los aceites y los "cubitos de sopa", resbaló y sufrió una caída. En consecuencia, el 14 de agosto de 1991, la señora Rosado Feliciano y su madre Doña

Berta Feliciano Crespo presentaron una demanda por daños y perjuicios contra el referido supermercado y contra su compañía aseguradora. En dicha demanda alegaron que la caída sufrida por la codemandante Rosado Feliciano había ocurrido "como consecuencia de que el lugar estaba muy resbaloso"; que al caerse había sufrido golpes en la cadera, el cóccix, la espalda y la cabeza, y que "por la negligencia de la parte demandante [sic] de no tener el local apto para sus clientes", había sufrido los daños reclamados.

Solicitaron, además, que la codemandante Feliciano Crespo fuese indemnizada por los daños emocionales sufridos como consecuencia de haber visto sufrir a su hija con posterioridad a la referida caída. Por su parte, los demandados presentaron su contestación a la demanda para alegar que los daños sufridos por la parte demandante, si alguno, habían ocurrido como consecuencia de sus propios actos.

Tras varios trámites procesales, el Tribunal Superior, Sala de Mayagüez, dictó una sentencia que declaró con lugar la demanda instada y condenó a la parte demandada a pagar la suma de veinticuatro mil dólares ($24,000) a la señora Rosado Feliciano y seis mil dólares ($6,000) a la señora Feliciano Crespo, por razón de los sufrimientos físicos y mentales sufridos como consecuencia de la negligencia del establecimiento demandado. Dispuso, además, el pago de las costas del litigio, la cantidad de dos mil dólares ($2,000) por concepto de honorarios de abogado y el pago de intereses por temeridad computados al siete por ciento (7%) anual desde la fecha de la presentación de la demanda.

Inconforme con el dictamen del Tribunal Superior, la parte demandada acudió ante nos mediante un recurso de revisión que solicita la revocación de la sentencia recurrida y señala la comisión de los errores siguientes:

1. Erró el Honorable Tribunal en la apreciación de la prueba médica, en su mayoría estipulada, al responsabilizar a la parte demandada en su totalidad por una enfermedad preexistente cuando la caída sólo causó un agravamiento de dicha condición prexistente.

2. Erró el Honorable Tribunal de Instancia al apreciar erróneamente la prueba de daños, compensando así daños inexistentes, preexistentes y especulativos.

3. Erró el Honorable Tribunal al determinar que medió temeridad por parte de 'Mr. Special' en la tramitación del litigio imponiendo el pago de honorarios e intereses desde la radicación de la demanda.

4. Erró el Honorable Tribunal al definir la norma de derecho aplicable en casos de daños y perjuicios por caídas en forma totalmente distinta a la esbozada por esta Honorable Superioridad.

5. Erró el Honorable Tribunal al estimar probado el elemento de negligencia conforme la norma de derecho establecida cuando no se presentó prueba suficiente relativa a condición de peligrosidad existente que provocó la caída, siendo o debiendo ser conocida por la parte demandada.

A los fines de evaluar la referida solicitud de revisión, el 18 de marzo de 1994 dictamos una resolución para ordenar a la parte recurrente que procediera a preparar una exposición narrativa de la prueba. Examinada ésta, el 18 de noviembre de 1994 concedimos un término a los demandantes recurridos para que mostrasen causa, si la hubiese, por la cual no debíamos revocar la sentencia recurrida al no estar sostenida por la prueba presentada. Con el beneficio de su comparecencia, resolvemos.

## II

En síntesis, los planteamientos de la parte recurrente giran en torno a la apreciación de la prueba que realizara el tribunal de instancia al imponer responsabilidad por negligencia a la parte demandada, el monto otorgado por los daños y la concesión de honorarios de abogado. Ante tales planteamientos, procede que analicemos la prueba que fue vertida ante el foro a quo.

Según se desprende de la exposición narrativa de la prueba que obra en autos, dicha prueba consistió en el testimonio de cuatro (4) testigos. Específicamente, testificaron ambas demandantes, la Sra. María Luisa Rosado Feliciano y la Sra. Berta Feliciano Crespo; el perito de la parte demandante, Dr. Fidel A. Pino López, y el Sr. Benjamín Ramos Soto, empleado del supermercado demandado.

La señora Rosado Feliciano testificó, en lo pertinente, que el 15 de junio de 1991 había visitado el Supermercado Mr. Special con el propósito de comprar algunos artículos para su consumo. Allí tomó un carrito de compra y comenzó a recoger los artículos. Cuando entró a uno de los pasillos del supermercado para recoger unos "cubitos de sopa", resbaló y cayó sentada hacia el lado derecho. Indicó que no perdió el conocimiento, pero que sintió un fuerte dolor y quedó aturdida; que inmediatamente el Sr. Benjamín Ramos, quien se encontraba trabajando en dicho pasillo, la ayudó a levantarse, la arrinconó contra la góndola y, posteriormente, se fue del lugar. Sostuvo que el lugar donde resbaló se veía brilloso, como con una sustancia, y que el resbalón de su zapato quedó marcado en dicha sustancia; que cuando llegó al área donde se encontraban las cajeras, una de éstas había comentado que el lugar de la caída tenía mucha cera.

Señaló, además, no saber qué había en el lugar, aunque indicó que en el referido pasillo se encontraban localizados los aceites. Sin embargo, no identificó aceite en el suelo ni indicó haber visto algún envase de aceite abierto o roto. A preguntas de su abogado, indicó que había visto una marca como un rasponazo, el cual había sido provocado por su zapato en el lugar de la caída; que dicha marca no tenía color, puesto que era transparente, y que no sabía lo que era en específico.

El testimonio de la señora Feliciano Crespo, madre de la accidentada, estuvo dirigido a establecer tanto los sufrimientos físicos de su hija, como sus propios sufrimientos y

angustias mentales. En lo pertinente, sostuvo que el sufrimiento y dolor por el que atravesó su hija a raíz del incidente también le habían causado sufrimientos y angustias a ella, ya que se había visto obligada a realizar las tareas pesadas del hogar. Estas tareas eran realizadas por su hija antes del accidente, ya que ella se encontraba recuperándose de un infarto; en éstas ahora le ayudaba otra de sus hijas. En cuanto a los detalles específicos del accidente, no prestó testimonio alguno, ya que no tenía conocimiento personal de los hechos.

El perito de la parte demandante, Dr. Fidel A. Pino López, declaró sobre el examen médico que realizó a la señora Rosado Feliciano con posterioridad a la caída. A esos efectos testificó que ésta presentaba un residuo de hematoma en la nalga lateral derecha, una fractura sanada en el cóccix (sacral 4), y que sentía dolor en el área de la espalda baja y del cuello. Además, luego de varios exámenes y visitas, determinó que la paciente no tenía otra fractura o lesión, pero que según revelaban las radiografías efectuadas, presentaba una degeneración progresiva de los discos cervicales 3 y 4 (c3 y c4). En cuanto a la fractura del cóccix, indicó que ésta había sanado, por lo que no realizó exámenes para determinar si tenía alguna incapacidad residual en el área sacral ya que, en su opinión y según lo que reflejaban las placas, ello no era necesario. Sostuvo que podía esperarse cualquier molestia en el área luego de ocurrir una fractura.

Señaló que, en lo general, las condiciones degenerativas en los discos no eran producidas necesariamente por un trauma, pero que en este caso, debido a que con anterioridad a la caída la demandante se encontraba asintomática, podía concluirse que la sintomatología sufrida posteriormente había sido desencadenada por dicha caída; que tales condiciones podían permanecer asintomáticas por toda la vida o que, por el contrario, podían llegar a producir dolor.

Indicó que también podía manifestarse dolor al ocurrir un trauma, como lo es una caída.

Testificó, además, que en este caso, a falta de habérsele provisto el historial médico de la paciente y en vista de lo informado por ésta, en su opinión, aunque la condición podría ser preexistente, el impacto producido por la caída provocó la manifestación del dolor. Este dolor podía producir algún grado de incapacidad, sin embargo, no identificó en específico qué tipo de incapacidad.

Por último, se presentó el testimonio del Sr. Benjamín Ramos Soto, empleado del establecimiento demandado. Éste, en lo pertinente, indicó que el 15 de junio de 1991, mientras trabajaba en una de las góndolas del supermercado, se percató de que la señora Rosado Feliciano se había caído cerca del área donde él se encontraba trabajando. Abandonó su trabajo e inmediatamente ayudó a la señora Rosado a levantarse, y le preguntó qué le había ocurrido. Ésta le indicó que había resbalado, por lo que ambos observaron el área para identificar la causa del resbalón, pero nada había en el lugar. Ante la ausencia de alguna sustancia que provocara la caída, la señora Rosado le indicó que podían haber sido sus zapatos ya que estaban desgastados.

Sostuvo, además, que posteriormente fue llamado a la oficina del supermercado. Allí el gerente le preguntó sobre lo ocurrido, a lo cual le indicó que la señora Rosado había sufrido una caída y que él la había ayudado a levantarse, pero que en el lugar no habían visto nada que hubiese podido causar dicha caída.

### III

Es un principio cardinal de derecho que cuando una empresa mantiene abierto al público un establecimiento, con el objeto de llevar a cabo operaciones comerciales para su propio beneficio, debe hacer lo posible por mantener dicho

establecimiento en condiciones de seguridad tales que sus clientes no sufran daño alguno. *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644 (1985); *Aponte Betancourt v. Meléndez*, 87 D.P.R. 652 (1963); *Weber v. Mejías*, 85 D.P.R. 76 (1962); *Santaella Negrón v. Licari*, 83 D.P.R. 887 (1961); *Goose v. Hilton Hotels*, 79 D.P.R. 523 (1956); *Gutiérrez v. Bahr*, 78 D.P.R. 473 (1955).

No obstante, hemos sostenido que el dueño de un establecimiento no es un asegurador absoluto de la seguridad de sus clientes y que su deber sólo se extiende al ejercicio del cuidado razonable, razón por la cual el demandante tendrá que probar que el dueño del establecimiento no ha ejercido el debido cuidado para que el local sea seguro. *Goose v. Hilton Hotels*, supra.

En los casos de daños y perjuicios específicamente a consecuencia de caídas, hemos resuelto que la parte demandante deberá probar, como parte esencial de su causa de acción, la existencia de la condición peligrosa que alegadamente ocasionó la caída, y que dicha condición era conocida por la parte demandada o que podría imputarse a ésta tal conocimiento. *Cotto v. C.M. Ins. Co.*, supra. Véanse, además: *Maldonado v. Interamerican University*, 104 D.P.R. 420 (1975); *González Ivankovich v. Las Amer. Prof. Ctr.*, 103 D.P.R. 89 (1974); *Malavé v. Hosp. de la Concepción*, 100 D.P.R. 55 (1971); *Feliciano v. Escuela de Enfermeras*, 94 D.P.R. 535 (1967); *Ferro v. A.M.A.*, 91 D.P.R. 770 (1965); *Torres v. Metropolitan School*, 91 D.P.R. 1 (1964); *Weber v. Mejías*, supra; *Goose v. Hilton Hotels*, supra.

Frente a la normativa antes expuesta, y luego de un examen detenido y objetivo de la prueba antes esbozada, nos resulta forzoso concurrir con las expresiones vertidas por el foro recurrido en su sentencia. Ciertamente, el cúmulo de hechos esenciales probados en el caso de autos permite inferir que la caída sufrida por la codemandante Rosado Feliciano se debió a la presencia de una sustancia brillosa y resbalosa en el suelo.

Nótese que de la prueba presentada por la parte demandante surgen expresiones tendentes a establecer que la caída se debió al exceso de cera en el lugar, condición que puede ser considerada como peligrosa al tornar el área resbalosa. A esos efectos, la codemandante accidentada sostuvo reiteradamente que el lugar de la caída *se notaba más brilloso* que en sus alrededores.

De otra parte, se desprende de la sentencia recurrida que *la cajera del establecimiento demandado, así como su gerente*, expresaron la posibilidad del referido exceso de cera. Dichas expresiones, a su vez, demuestran que el conocimiento de la condición peligrosa podía imputársele al establecimiento demandado. Adviértase, además, que la parte demandada no presentó prueba tendente a refutar la existencia de cera en el lugar.

Ante tales circunstancias, coincidimos con el foro recurrido en que la parte demandante no tenía que probar qué sustancia específica había en el lugar, cuando la prueba presentada pudo establecer *a satisfacción del tribunal de instancia* que existía una sustancia que hacía el lugar más resbaloso. Máxime, considerando que es doctrina reiteradamente establecida que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no intervendrán con la apreciación de la prueba que realicen los tribunales de instancia. *Rodríguez Oyola v. Machado Díaz*, 136 D.P.R. 250 (1994); *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 D.P.R. 203 (1994); *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785 (1993).

## IV

Por otro lado, la parte recurrente plantea que erró el foro a quo al estimar y valorizar los daños sufridos por la parte demandante. Razón por la cual, a su entender, debemos intervenir con la cuantía adjudicada. Concluimos que

le asiste la razón sólo en cuanto a la cuantía adjudicada a la codemandante Sra. Berta Feliciano Crespo. Veamos.

La función de estimación y valorización de los daños físicos y mentales descansa en el juicio discrecional, sereno, prudente y razonable del juzgador de instancia. Véanse: *Torres Solís et al. v. A.E.E. et als.*, 136 D.P.R. 302 (1994); *Toro Mercado v. P.R. & Amer. Ins. Co.*, 87 D.P.R. 658 (1963); *Rivera v. Rossi*, 64 D.P.R. 718 (1945). De ordinario, respetaremos esa decisión y no intervendremos con la valorización realizada, ya que el foro de instancia se encuentra en mejor posición para evaluar sus elementos visibles e intangibles. Asimismo, hemos resuelto que en caso de que este Tribunal entienda que la cuantía adjudicada en instancia resulta ser exagerada o muy baja podríamos intervenir y ajustarla. *Torres Solís et al. v. A.E.E. et als.*, supra; *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987); *Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975).

Según se desprende de la sentencia recurrida, así como del testimonio pericial que obra en autos, los daños físicos sufridos por la codemandante Rosado Feliciano consistieron en la fractura del cóccix producida durante la caída, así como las molestias y los dolores que pueden surgir con posterioridad a dicha fractura, además de los dolores causados por una condición degenerativa en los discos cervicales, cuya manifestación fue desencadenada por la caída sufrida.

Ante tales circunstancias, y al amparo de la normativa antes expuesta, resolvemos que no se encuentran ante nos las circunstancias que ameriten que intervengamos con la valorización realizada por el foro sentenciador y modifiquemos la cuantía concedida a la señora Rosado Feliciano.

Por el contrario, en cuanto a la compensación concedida a la codemandante Feliciano Crespo, según se desprende de la exposición narrativa de la prueba, los únicos daños sufridos por ésta consistieron en el hecho de que, a consecuencia del accidente sufrido por su hija, había tenido que

realizar las tareas pesadas del hogar. *En estas tareas ahora le ayuda su otra hija.* En consecuencia, y atendido el hecho de que el reclamante de daños no puede descansar en establecer una simple pena pasajera, sino que debe demostrar en cierta medida apreciable que quedó afectado su salud, bienestar o felicidad,[1] es forzoso concluir que la indemnización concedida a la señora Feliciano Crespo resulta excesiva. Asimismo, estimamos razonable la suma de dos mil dólares ($2,000) como la cuantía que ha de ser concedida a la codemandante referida.

Finalmente, respecto a la concesión de honorarios de abogado, concluimos que la parte demandada recurrente no incurrió en temeridad, ya que según se desprende de los hechos particulares del caso de autos, existía una controversia en cuanto a la existencia de una condición peligrosa en el lugar del accidente. En consecuencia, debe eliminarse la suma de dos mil dólares ($2,000) concedida por concepto de honorarios de abogado, así como los intereses impuestos por temeridad.[2]

Por todos los fundamentos expuestos, *se expide el auto, se confirma la cuantía concedida a la codemandante Sra. María Luisa Rosado Feliciano y se modifica la sentencia recurrida a los únicos efectos de reducir a dos mil dólares ($2,000) la cuantía concedida a la Sra. Berta Feliciano Crespo. Se eliminan, además, las partidas concedidas por honorarios de abogado e intereses por temeridad.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López disintió con una opinión escrita. La Juez Asociada Señora

---

[1] *Moa v. E.L.A.*, 100 D.P.R. 573, 587 (1972); *Ramos Rivera v. E.L.A.*, 90 D.P.R. 828, 831 (1964); *Hernández v. Fournier*, 80 D.P.R. 93, 103 (1957).

[2] Véanse las Reglas 44.1(d) y 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Naveira de Rodón disintió "por entender que las cuantías impuestas por el foro de instancia son adecuadas".

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

La labor de un juez, en adición a ser una delicada y difícil, es una que resulta ser, de ordinario, ingrata. Ello en vista de que, como en todos los casos que vienen ante la consideración de un magistrado hay dos (2) partes, la decisión que se emite por éste —cualquiera que ésta sea— nunca puede beneficiar a ambas partes; lo cual causa que *siempre* una de las partes esté inconforme con la decisión emitida. Ello, sin embargo, *no* puede ser óbice para que el juez no decida el caso cómo realmente procede hacerlo en derecho ya que, después de todo, *esa precisamente es su función.*

En el presente caso, al igual que en muchos otros, la mayoría de los integrantes del Tribunal pretende "complacer" a ambas partes; esto es, en lugar de resolver conforme a derecho, *revocando en su totalidad la sentencia recurrida*, pretende "oficiar en la misa y repicar las campanas" a la misma vez. Dicha situación, a nuestra manera de ver las cosas, resulta ser inaceptable. Es por ello que disentimos.

I

En *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644, 650–651 (1985), *reiteramos* la norma a los efectos de que, en un caso de daños y perjuicios donde se alegue la ocurrencia de daños como consecuencia de la negligencia de la parte de-

mandada, *le corresponde a la parte actora el peso de la prueba respecto a dicha negligencia*; esto es, "la parte demandante tiene *la obligación* de poner al tribunal en condiciones de poder hacer una *determinación clara y específica* sobre negligencia mediante la presentación de prueba a esos efectos". (Énfasis suplido.) Íd., pág. 651.

Por otro lado, en el referido caso de *Cotto v. C.M. Ins. Co.*, ante, pág. 651, *expresamente* hicimos constar que un análisis de nuestra jurisprudencia, *referente a la situación específica de reclamaciones por caídas*, refleja que es *requisito indispensable* que la parte demandante *pruebe*, "como *parte esencial* de la causa de acción que ejercita, *la existencia de la condición de peligrosidad que ocasionó la caída*". (Énfasis suplido.)

## II

Un somero examen de la exposición narrativa de la prueba e, inclusive, de la sentencia mayoritaria emitida en el presente caso es todo lo que se necesita para uno poder percatarse de que a la parte demandada recurrente le asiste la razón en su quinto señalamiento de error; esto es, que el foro de instancia erró al "estimar probado el elemento de negligencia" requerido por nuestra jurisprudencia en esta clase de casos.

Dicho de una manera más sencilla, en el presente caso hay *ausencia total de prueba* sobre cuál fue la condición de peligrosidad, alegadamente existente en el establecimiento en controversia, que fue la causa de la caída que sufriera la codemandante María Luisa Rosado Feliciano. Un examen del testimonio que ésta prestara ante el foro de instancia revela que ella realmente *no* sabe, *ni* puede decir, en qué —si algo— resbaló; expresiones a los efectos de que "el lugar donde resbaló se veía brilloso, como con una sustancia", ciertamente *no* son suficientes para imponerle responsabilidad a la parte demandada. *Por otro lado*, y como

surge de la propia sentencia mayoritaria, dicha codemandante específicamente declaró "no saber qué había en el lugar" donde se cayó.

Por último, *y a la luz de lo antes expresado*, el testimonio del empleado del establecimiento demandado, Sr. Benjamín Ramos Soto, es uno que *no* puede ser descartado y que merece entera credibilidad. Este testificó que en el lugar donde la codemandante Feliciano Crespo había resbalado "nada había" que pudiera haber ocasionado la caída y que, en su opinión, la misma se debió al *desgaste* de los zapatos que usaba dicha señora.

## III

Ante ese *claro y contundente* cuadro de hechos, ¿qué hace el Tribunal? En su afán de "complacer" a ambas partes, *y en lugar de revocar la sentencia recurrida*, este Foro hace una "justicia salomónica"; esto es, *reduce* en una tercera parte la compensación erróneamente concedida a una de las demandantes por el foro de instancia, acción que *ni* explica el Tribunal *ni* encuentra apoyo en la prueba, y *elimina* la partida de honorarios de abogado.[1]

*No* se le hace cumplida justicia a la parte demandada en el presente caso meramente reduciendo la indemnización concedida a una de las demandantes por el foro de instancia. A esos efectos, debe mantenerse presente que *justicia a medias, no es justicia*. Es por ello que disentimos.

---

[1] Resulta, *cuando menos curioso*, que el Tribunal señala, como fundamento de su acción eliminatoria de honorarios de abogado, que así procede hacerlo en vista de que la parte demandada recurrente "*no* incurrió en temeridad, ya que según se desprende de los hechos particulares del caso de autos, *existía una controversia en cuanto a la existencia de una condición peligrosa en el lugar del accidente*". (Énfasis suplido.) Opinión mayoritaria, pág. 955.

Dichas expresiones, *naturalmente*, sostienen nuestra contención a los efectos de que la parte demandante *no* demostró la existencia de la "condición de peligrosidad" en el lugar de la caída, requisito indispensable en esta clase de casos.