ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| LEONARDO HERNÁNDEZ MORALES<br><br>Apelado<br><br>v.<br><br>CENS ENTERPRISES, CORP, SUPERMERCADO FAMCOOP CAMUY, INTEGRAND ASSURANCE COMPANY, JOHN DOE, JANE DOE, RICHARD ROE, COMPAÑÍA DE SEGUROS Y, COMPAÑÍA DE SEGUROS Z<br><br>Apelantes | KLAN202401113 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Hatillo<br><br>Caso Núm.: CM2021CV00241<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de enero de 2025.

Comparecen CENS Enterprises Corp., en adelante CENS, Supermercado Famcoop-Camuy, en adelante Famcoop, y la Asociación de Garantía de Seguros Misceláneos de Puerto Rico, en conjunto los apelantes, quienes solicitan que revoquemos la *Sentencia* dictada el 31 de octubre de 2024 y notificada el 12 de noviembre de 2024, por el Tribunal de Primera Instancia, Sala de Hatillo, en adelante TPI. Mediante la misma, se declaró ha lugar la demanda y se ordenó a CENS pagar $33,600.00 a favor del señor Leonardo Hernández Morales, en adelante el señor Hernández o el apelado.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**-I-**

En lo aquí pertinente, el señor Hernández presentó una *Primera Demanda Enmendada* sobre daños y perjuicios contra los apelantes.[1] Alegó, en esencia, que por las condiciones peligrosas existentes en el estacionamiento de Famcoop sufrió una caída que le causó múltiples lesiones corporales. Adujo, además, que los apelantes fueron negligentes porque conocían las condiciones peligrosas. Así pues, reclamó una cantidad no menor de $120,000.00 por los daños físicos, $25,000.00 por los sufrimientos y angustias mentales y $5,000.00 por los gastos médicos incurridos.

Por su parte, los apelantes presentaron una *Contestación a Demanda Enmendada*.[2] Aceptaron algunas alegaciones, negaron otras y, en síntesis, sostuvieron que no hubo negligencia porque "[l]os sucesos objeto de esta demanda son imprevistos e inevitables".

Luego de varios trámites se celebró el juicio en su fondo. Las partes presentaron prueba documental, prueba testifical y el apelado presentó prueba pericial. Examinada la prueba, el TPI dictó una *Sentencia* en la que declaró con lugar la demanda, calculó daños ascendentes a $42,000.00, pero al restarle el 20% de negligencia comparada ordenó a los apelantes pagar $33,600.00.[3] El foro primario consideró probados los siguientes hechos:

1. El 21 de noviembre de 2018, aproximadamente a las 6:30 p.m., el Sr. Hernández Morales se dirigía al Supermercado Famcoop, localizado en Camuy, Puerto Rico, para llevar un pavo para asar por motivos de la celebración del Día de Acción de Gracias.

---

[1] Apéndice del apelante, págs. 6-9.
[2] *Id.*, págs. 10-14.
[3] *Id.*, págs. 48-53.

2. El Sr. Hernández Morales conocía del establecimiento, ya que lo visitaba con cierta frecuencia.

3. El Sr. Hernández Morales se bajó de su automóvil cuando, sosteniendo el pavo en las manos, se percata de un hueco en el pavimento del estacionamiento.

4. Al esquivar el hueco, se tropieza con un "wheel stopper" y cae al suelo, impactándole el dedo meñique de la mano derecha, espalda y rodilla derecha.

5. Un cliente del establecimiento busca a un empleado para que lo asistiera.

6. El Sr. Alexander Ramos Sánchez (en adelante "Sr. Ramos Sánchez"), quien trabaja como cajero en Famcoop, le ofreció asistencia para levantarse del suelo.

7. El Sr. Ramos Sánchez le ofrece al Sr. Hernández Morales llamar una ambulancia, pero este rechazó la misma.

8. El 22 de noviembre de 2018, aproximadamente a las 2:30 p.m., acude al CDT de Quebradillas al todavía sentirse adolorido por la caída sufrida.

9. En el CDT de Quebradillas, le realizaron radiografías de la mano derecha, espalda en el área lumbar y rodilla derecha.

10. Las radiografías no demostraron la presencia de alguna fractura.

11. Fue dado de alta con una receta de Cataflam e instrucciones de acudir a su médico primario.

12. El 26 de noviembre de 2018, el Sr. Hernández acudió a su médico primario el Dr. Ramón Vélez Arce, médico de familia.

13. El Dr. Vélez Arce ha tratado por aproximadamente 20 años al Sr. Hernández Morales como su médico primario.

14. El Sr. Hernández Morales tenía condiciones prexistentes, las cuales ya estaban bajo tratamiento con el Dr. Vélez Arce.

15. El Sr. Hernández Morales presentó una queja de dolor en la rodilla derecha, mano derecha y el área lumbar derecha.

16. El Dr. Ramón Vélez Arce (en adelante "Dr. Vélez Arce") diagnosticó al Sr. Hernández con dolor en el área lumbar, rodilla derecha inflamada,

abrasiones en la rodilla derecha, laceraciones en la mano derecha y el dedo meñique de la mano derecha lastimado.

17. El Dr. Vélez Arce le indicó al Sr. Hernández Morales que continuara tomando el Cataflam de 50 mg como le fue prescrito en sala de emergencia.

18. El Dr. Vélez Arce relacionó el dolor en el lumbar del demandante Leonardo Hernández con la caída sufrida en las facilidades del Supermercado Famcoop.

19. El 28 de noviembre de 2018, el Sr. Hernández Morales regresó al consultorio del Dr. Vélez Arce con la queja del dolor lumbo sacral por espasmo muscular y dolor en el dedo meñique de la mano derecha.

20. El Dr. Vélez Arce examinó al Sr. Hernández Morales y lo refirió a siete sesiones de terapia física.

21. El Sr. Hernández Morales tomó siete sesiones de terapia física en la Clínica de Medicina Deportiva del Norte desde el 29 de noviembre de 2018 a 20 de diciembre de 2018.

22. Las terapias físicas consistían en frío, calor, masajes y terapia de electricidad.

23. El 14 de diciembre de 2018, el Sr. Hernández Morales regresó al consultorio del Dr. Vélez Arce con la queja de dolor en el área lumbar para lo cual prescribió oxicodone cuando fuese necesario.

24. El 21 de diciembre de 2018, el Sr. Hernández Morales regresó al consultorio del Dr. Vélez Arce quien diagnosticó que el paciente continuaba con el dolor e inflamación en el área lumbar en el lado derecho luego de haber terminado las terapias físicas.

25. Le recetó Cataflam de 50mg para la inflamación y Baclofén de 20mg, un relajante muscular para el espasmo muscular.

26. El Sr. Hernández Morales continuó con el dolor en el área lumbar derecha, por lo que, el 1 de marzo de 2019, el Dr. Vélez Arce lo refirió a siete sesiones adicionales de terapia física por espasmo muscular.

27. El Sr. Hernández Morales tomó siete sesiones de terapia física del 28 de marzo de 2019 al 14 de abril de 2019.

28. Las terapias físicas consistían en calor, frío, masajes y electricidad.[4]

A la luz de lo anterior, el foro sentenciador concluyó lo siguiente:

> …CENS Enterprise tenía el deber jurídico de actuar, ya que estos cuentan con el deber de prever cualquier daño que sus clientes puedan sufrir, manteniendo las áreas en óptimas condiciones. En el caso de autos, el Sr. Hernández Morales sufrió una caída en el establecimiento del Supermercado Famcoop al tratar de esquivar un hueco en el estacionamiento y tropezarse con un "wheel stopper"… testificó el Dr. Vélez Arce, a pesar del Sr. Hernández Morales padecer de condiciones médicas previas, la caída agravó su condición. Además, de las fotografías presentadas, en efecto se demostró la presencia del hueco en el estacionamiento. Este Tribunal entiende que, en efecto, existía una condición peligrosa que provocó la caída del Sr. Hernández Morales, y que dicha condición fue la que con mayor probabilidad le ocasionó el daño al demandante. La parte demandada no aportó prueba alguna que sostuviera el desconocimiento del hueco en el estacionamiento, por lo que la condición peligrosa era conocida, o debió ser conocida, por CENS Enterprises.
>
> Más, sin embargo, este Tribunal entiende que existe negligencia concurrente por parte del Sr. Hernández Morales. Al momento de la caída, el demandante cargaba en sus manos un pavo. El Sr. Hernández Morales debió ejercer su deber de cuidado que una persona prudente y razonable ejercería para evitar una caída… Este Tribunal le imputa una negligencia comparada al demandante de 20%.[5]

En desacuerdo, los apelantes presentaron una *Apelación*, en la cual invocan la comisión de los siguientes errores:

> ERRÓ EL TPI AL CONCLUIR QUE EXISTÍA UNA CONDICIÓN DE PELIGROSIDAD EN EL ESTABLECIMIENTO COMERCIAL, EN LA APRECIACIÓN DE LA PRUEBA PERICIAL PRESENTADA, COMETIENDO ERROR MANIFIESTO AL AQUILATAR TODA LA PRUEBA PRESENTADA, LO QUE NO REPRESENTA EL BALANCE MÁS JUSTICIERO Y JURÍDICO DE LA TOTALIDAD DE LA PRUEBA PRESENTADA.
>
> ERRÓ EL TPI AL OTORGAR UNA CUANTÍA MONETARIA EXAGERADAMENTE ALTA Y USAR COMO CASOS COMPARABLES JURISPRUDENCIA NO APLICABLE PARA JUSTIFICAR DICHA CUANTÍA.

---

[4] *Id*., págs. 49-50.
[5] *Id*., págs. 52-53.

Luego de revisar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

-II-

A.

El Artículo 1802 del Código Civil de 1930 dispone que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".[6] La imposición de responsabilidad civil al amparo de dicha norma requiere que concurran tres elementos, a saber: (1) que se establezca la realidad del daño sufrido; (2) que exista la correspondiente relación causal entre el daño y la acción u omisión de otra persona; y (3) que dicho acto u omisión sea culposo o negligente.[7] Ahora bien, la negligencia consiste en no precaver las consecuencias lógicas de una acción u omisión que cualquier persona prudente hubiese previsto bajo las mismas circunstancias.[8]

El Tribunal Supremo de Puerto Rico, en adelante TSPR, ha sostenido que:

> … para que ocurra un acto negligente "es suficiente que el actor haya previsto que su conducta probablemente resultaría en daños de alguna clase a alguna persona aunque no hubiese previsto las consecuencias particulares o el daño específico que resultó, ni el mecanismo particular que lo produjo, ni la persona específica del perjudicado".[9]

Por su parte, el elemento de previsibilidad se encuentra relacionado con el requisito de nexo causal.

---

[6] 31 LPRA sec. 5141; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 374 (2012); *Cintrón Adorno v. Gómez*, 147 DPR 576, 598 (1999).
[7] *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010); *Pons v. Engebretson*, 160 DPR 347, 354 (2003); *Tormos Arroyo v. DIP*, 140 DPR 265 (1996). Cabe destacar que el Código Civil de Puerto Rico de 1930, vigente al momento en que surgieron los hechos del presente caso, fue derogado y sustituido mediante la Ley Núm. 55-2020, aprobada el 1 de junio de 2020, conocida como Código Civil de Puerto Rico de 2020.
[8] *López v. Porrata Doria*, 169 DPR 135 (2006).
[9] *Id*.

Sobre el particular, en nuestro ordenamiento jurídico rige la doctrina de la causalidad adecuada, que establece que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[10]

Por último, en lo pertinente a la controversia ante nuestra consideración, el TSPR ha reconocido la existencia de ciertas actividades específicas que conllevan un deber especial de vigilancia, cuidado y protección hacia el público en general o hacia ciertas personas en particular de parte de quien las ejecuta. Esta responsabilidad, que genera un deber de cuidado mayor, se fundamenta en las circunstancias de la situación (entiéndase el tiempo, el lugar y las personas) y en las exigencias de la obligación particular en la que se sitúan los involucrados.[11]

Así, por ejemplo, una empresa que mantiene abierto al público un establecimiento, con el propósito de llevar a cabo operaciones comerciales para su propio beneficio, tiene el deber de mantener dicho establecimiento en condiciones de seguridad tales que sus clientes no sufran daño alguno.[12] Este deber implica que el dueño u operador debe ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño.[13]

Ahora bien, esto no significa que el dueño de un establecimiento comercial asume una responsabilidad absoluta frente a cualquier daño sufrido por sus clientes.

---

[10] *Nieves Díaz v. González Massas, supra*, citando a *Jiménez v. Pelegrina Espinet*, 112 DPR 700, 704 (1982) y *Soc. de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974). Véase, además, *Ramos Milano v. Wal-Mart*, 168 DPR 112, 120 (2006).
[11] *Santiago v. Sup. Grande*, 166 DPR 796, 809 (2006); *Administrador v. ANR*, 163 DPR 48, 60 (2004).
[12] *Colón y otros v. K-Mart y otros,* 154 DPR 510, 518 (2001).
[13] *Id.*, citando a *Soc. Gananciales v. G. Padín Co., Inc.*, 117 DPR 94, 104 (1986).

Por el contrario, para que se le imponga responsabilidad, el demandante tiene que probar que el dueño no ejerció el debido cuidado para que el local fuese seguro.[14]

A tenor con lo anterior, el TSPR ha resuelto que los dueños de establecimientos comerciales son responsables por los daños ocasionados a causa de condiciones peligrosas existentes en los predios de su propiedad, siempre y cuando estas hayan sido conocidas por los propietarios o el conocimiento de estas les sea imputable.[15] Para ello, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que esta era conocida por el demandado, o que debió conocerla.[16]

**B.**

Por otra parte, el Artículo 1802 del Código Civil, *supra*, también incluye la doctrina de la negligencia comparada al establecer que "la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". Dicha doctrina, también conocida como concurrencia de culpas, permite atenuar la responsabilidad de la parte demandada.[17] De modo, que cuando se haya establecido la concurrencia de faltas como causa del daño, la parte demandada debe reparar aquella parte del perjuicio proporcional a la falta cometida por ella; así la responsabilidad se fijará según la gravedad de las respectivas faltas.[18]

---

[14] *Colón y otros v. K-mart y otros*, *supra*, págs. 518-519.
[15] *Id.*
[16] *Id.*
[17] *Colón Santos v. Coop. Seg. Mult. PR*, 173 DPR 170, 178 (2008); *Prieto v. Maryland Casualty, Co.*, 98 DPR 594 (1970); *Ramos v. Carlo*, 85 DPR 353 (1962).
[18] *Colón Santos v. Coop. Seg. Mult. PR, supra*, pág. 178; *Acosta Vargas v. Tió*, 87 DPR 262, 279 (1963).

## C.

El concepto "daño" comprende tanto pérdidas patrimoniales como no patrimoniales. Así pues, los daños patrimoniales incluyen el valor de la pérdida sufrida y la ganancia dejada de obtener por un acreedor.[19] En cambio, los daños no patrimoniales, es decir, morales o emocionales, son aquellos que se infligen sobre las creencias, sentimientos, dignidad, estima social o la salud física o psíquica del perjudicado.[20] Bajo esta categoría se incluyen los daños físicos y las angustias mentales.

Ahora bien, valorar los daños es un ejercicio judicial complejo. Esto obedece a que, en última instancia, representa adscribir un valor monetario a un menoscabo que solo puede ser aprehendido, en toda su extensión, por quien lo sufre. Al respecto, el TSPR ha sostenido reiteradamente que la estimación y valorización de los daños resulta en una tarea difícil y angustiosa, ya que "no existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden completamente complacidas y satisfechas".[21]

Ello no significa que el juzgador de los hechos se tenga que quedar cruzado de brazos. Por el contrario, en este proceso de valorización de daños constituyen un medio muy valioso para realizar tan compleja tarea, las cuantías otorgadas en casos similares resueltos anteriormente. Estas sirven como punto de partida y referencia útil para

---

[19] 31 LPRA sec. 3023.
[20] *Ruiz Mattei v. Commercial Equipment Finance, Inc.*, 2024 TSPR 68; *Elba ABM v. UPR*, 125 DPR 294 (1990).
[21] *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016); *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 909 (2012); *Herrera, Rivera v. SLG Ramírez-Vicéns*, 179 DPR 774, 784 (2010); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 509 (2009).

revisar las cantidades concedidas.[22] De esta forma, si la indemnización se ajusta a la concedida en casos similares, ajustada al valor presente, se presume razonable y no debe ser alterada en apelación.[23]

Cónsono con lo anterior, en *Santiago Montañez v. Fresenius Medical*, *supra*, el TSPR advirtió a los tribunales de primera instancia que, además de la prueba desfilada, deben evaluar:

> …las indemnizaciones concedidas en casos anteriores [debido a que] constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. Ello es así aun cuando reconocemos que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares. En todo caso, estas compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente.[24]

**D.**

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir por sus propias apreciaciones, las determinaciones del foro de instancia.[25] Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia.[26] El fundamento de esta deferencia es que el juez de primera instancia tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla.[27] En vista de esta deferencia, los tribunales apelativos no intervendremos con la apreciación de la prueba reflejada en las

---

[22] *Santiago Montañez v. Fresenius Medical*, *supra*, pág. 491.
[23] *Herrera, Rivera v. SLG Ramírez-Vicéns*, *supra*.
[24] *Santiago Montañez v. Fresenius Medical*, *supra*. (Citas omitidas).
[25] *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).
[26] *McConnel v. Palau*, 161 DPR 734, 750 (2004).
[27] *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001).

determinaciones de hechos del tribunal apelado en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad, o que cometió un error manifiesto.[28]

No obstante, cuando las conclusiones de hecho se basan en prueba pericial o documental, el tribunal de apelaciones se encuentra en la misma posición que el tribunal de instancia.[29] De modo, que el tribunal intermedio no está obligado a conceder deferencia a la apreciación de la prueba del foro sentenciador.

-III-

Para los apelantes, el señor Hernández "dejó de probar que existía una condición peligrosa en el estacionamiento comercial"… que le ocasionó un daño. Sostienen, además, que la negligencia comparada del apelado "es de tal magnitud" que absolvería cualquier negligencia de CENS. En su opinión, del récord médico se desprende que el señor Hernández padecía de una condición preexistente en la espalda "que es una condición crónica de desgaste natural relacionada con la edad y no con un evento agudo o una caída". Finalmente, arguyen que el caso que aplicó el foro recurrido como parámetro de comparación para la valoración de daños -*Rosado Feliciano v. Supermercado Mr. Special*, 139 DPR 946 (1996)- es "totalmente distinto", desde el punto de vista fáctico, al caso de autos.

Contrario a la contención de los apelantes, el apelado afirma que el TPI no incurrió en ninguno de los señalamientos de error porque se probaron los elementos de la causa de acción y el foro sentenciador aquilató la

---

[28] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020).
[29] *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016).

prueba correctamente. Además, aduce que los daños sufridos son similares a los establecidos en -*Rosado Feliciano v. Supermercado Mr. Special*, *supra*-, por lo que las cuantías concedidas no son excesivas. En todo caso, como señaló la parte apelada, los apelantes no presentaron jurisprudencia alternativa alguna que sea de mejor aplicación al presente caso. En su opinión, no hubo pasión, prejuicio, parcialidad o error manifiesto en la determinación del foro primario que justifique dejar sin efecto la *Sentencia* apelada.

Revisado el expediente, coincidimos con el apelado en que los apelantes no pusieron a este tribunal en posición de revisar la prueba testifical presentada en el pleito de epígrafe.

Del mismo modo, los apelantes no presentaron prueba pericial que permitiera evaluar la apreciación de esta por parte del foro sentenciador.

Igualmente, la impugnación de la valoración de los daños por los apelantes adolece del mismo defecto del esfuerzo infructuoso de cuestionar la apreciación de la prueba oral y pericial del foro recurrido. Así pues, estos no presentaron jurisprudencia sobre indemnización de daños que representara una valoración alternativa a la adoptada por el foro sentenciador. En fin, este Tribunal de Apelaciones no está en posición de imponer su criterio sobre la valoración de los daños, cuando es el Tribunal de Primera Instancia "el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en posición de emitir un juicio sobre la valoración de los daños".[30]

---

[30] *Santiago Montañez v. Fresenius Medical*, *supra*.

**-IV-**

Por los fundamentos previamente expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones