RAFAEL TORO MERCADO, ETC., demandante y recurrido, *v.* PORTO RICAN AND AMERICAN INSURANCE COMPANY, demandado y recurrente.

*Número:* R–62–2 *Resuelto:* 11 de marzo de 1963

*Héctor Martínez Muñoz,* abogado del recurrente; *E. Alcaraz Casablanca,* abogado del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández, y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En la certificación expedida por el doctor Luis Roberto Perea el mismo día de la ocurrencia del accidente que dio margen al presente litigio sobre el examen que practicó al joven Rafael Toro Mercado, dicho galeno hizo constar el hallazgo de una herida lacerada de una pulgada de largo en la región del mentón, y además, que "dicha lesión no es de carácter serio y que no habrá desfiguración ni incapacidad permanente como resultado de la misma." En el acto del juicio, celebrado dieciocho meses después, el abogado de la parte demandante requirió al lesionado para que se acercara

al estrado y mostrara al juez de instancia la cicatriz de la herida recibida, a los fines de que dicho magistrado hiciera la apreciación correspondiente sobre su extensión y naturaleza. Se expresó así: "El joven tiene una cicatriz en el mentón, como de tres cuartos de pulgada. No es muy visible . . . digo, a esa distancia([1]) es un poco visible, pero no tiene protuberancia alguna. El color de la piel es más o menos el mismo del resto del rostro del demandante." Luego comentó, "Una persona que no sepa que está esa cicatriz ahí no se da cuenta."

La prueba revela que después de sufrir el accidente, el joven lesionado fue conducido a la Clínica Perea, de Mayagüez, donde le suturaron la herida tomándole dos puntos. Se le administró una inyección y se le tomó una radiografía. Le cortaron los puntos a los tres o cuatro días y le colocaron un vendaje para cubrir el mentón que tuvo puesto por cerca de dos semanas. Estuvo ausente de la labor escolar por dos días.

Acordamos revisar la sentencia que concedió una indemnización de $5,000 e impuso a la parte demandada el pago de la suma de $500 para honorarios de abogado, según solicitado en la demanda. El único error que se señala impugna, por excesiva, la compensación.([2])

La estimación de los daños, especialmente por sufrimientos físicos y angustias mentales, es una función que descansa en la sana discreción del juzgador, *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961), con ánimo de reparar

---

([1]) El joven demandante se encontraba situado a una distancia de 10 a 12 pies del estrado.

([2]) Los hechos por los cuales se impuso responsabilidad a la demandada se resumen así en las determinaciones de hecho del tribunal a quo: "El día 20 de marzo de 1959, cerca del mediodía, el menor Rafael Toro Mercado, de 19 años de edad, recibió lesiones al ir corriendo en una bicicleta de su propiedad por la Calle 11 de Agosto de Mayagüez, en dirección de Oeste a Este, y tropezar éste con la puerta de un automóvil que se acababa de estacionar a la derecha de dicha calle, en ocasión de que el chófer de dicho vehículo, el Sr. Alfonso Acevedo, abría la puerta del lado izquierdo para bajarse del mismo por el lado del vehículo que daba hacia el centro de la calle."

al perjudicado, y en ausencia de circunstancias especiales, sin el propósito de castigar a su causante, *Rivera v. Rossi*, 64 D.P.R. 718, 721 (1945). No es fácil tarea, pues el dolor y el sufrimiento no pueden ser objeto de cotización. Tampoco es guía adecuada la cantidad por la cual el lesionado estaría dispuesto a soportar voluntariamente el daño, *Standard Oil Co. of California v. Shields*, 119 P.2d 116, 119 (Ariz. 1941), citado con aprobación en *Alabama Freight Lines v. Thevenot*, 204 P.2d 1050, 1052 (Ariz. 1949). Recientemente se ha evidenciado una marcada tendencia a fijar compensaciones altas, tal vez para subrayar la responsabilidad de las compañías aseguradoras,(³) *Ortiz Martínez v. Great Ame. Ind. Co.*, 83 D.P.R. 306 (1961); *Pérez González v. Vázquez-tell*, 86 D.P.R. 115 (1962). Sin embargo, no debe olvidarse que en último análisis estas pérdidas se distribuyen entre los miembros de un gran segmento de la población, y que en fin de cuentas, se traduce en una pérdida pecuniaria para toda la sociedad. Atkins, *The Impact of the Growth of Enterprise Liability on the Theory of Damages in Accident Cases*, 20 La. L. Rev. 50 (1959); Morris, *Liability for Pain and Suffering*, 59 Colum. L. Rev. 476 (1959); Jaffe, *Damages for Personal Injury: The Impact of Insurance*, 18 Law & Contemp. Prob. 219 (1953); James y Thornton, *The Impact of Insurance on the Law of Torts*, 15 Law & Contemp. Prob. 431 (1950); James, *Accident Liability Reconsidered: The Impact of Liability Insurance*, 57 Yale L. J. 549 (1948). Es por eso que la determinación del monto de los daños debe estar presidida por una ordenada ponderación, una serena reflexión, y una cuidadosa evaluación ética de la conducta de los protagonistas en el acto u omisión torticera. En general, véase, Harper y James, *The Law of Torts*, (1956), vol. 2, pág. 1299 y ss.

En el caso de autos, inescapable es la conclusión de que la indemnización concedida es a todas luces excesiva. No

---

(³) En algunos casos las compensaciones concedidas no han sido adecuadas, y ha sido preciso aumentarlas. *Acosta Vargas v. Tió*, 87 D.P.R. 262 (1963).

nos enfrentamos a incapacidad alguna ni a lesiones de gravedad. Una simple herida en el mentón—tan característica de los años de la infancia—apenas perceptible, y sin ulteriores consecuencias. Ausente está la privación permanente de un miembro vital del cuerpo, o lesiones graves. ¿Qué justifica entonces una compensación tan desproporcionada?

*Se modificará la sentencia recurrida para reducir a $1,000 el importe de la compensación, y así modificada, se confirmará.*