# 98 DTA 198

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE PONCE Y AIBONITO
### PANEL I

MARIA LIZARDI GONZALEZ Y OTROS
Demandantes-Apelados

v.

HOSPITAL EPISCOPAL SAN LUCAS Y OTROS
Demandados-Apelantes

Núm. KLAN-97-00883

San Juan, Puerto Rico, a 7 de agosto de 1998

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El demandado-apelante, Hospital Episcopal San Lucas de Ponce, en lo sucesivo el Hospital, solicita la revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 11 de junio de 1997, mediante la cual dicho foro declaró con lugar la demanda en daños y perjuicios instada por la parte demandante-apelada.

Por los fundamentos que a continuación exponemos, confirmamos la sentencia apelada.

El 16 de diciembre de 1993 la demandante, María Lizardi González, en lo sucesivo la Sra. Lizardi González, se encontraba hospitalizada en el Hospital San Lucas. Ese mismo día, en horas de la madrugada, la Sra. Lizardi González sufrió una caída en el baño de la habitación. El 14 de diciembre de 1994, La Sra. Lizardi González y sus siete hijos, Milagros, Sixto, Luis Manuel, Lady Elisa, María Isabel, Carlos Alberto y Rubén, todos de apellido Rivera Lizardi, presentaron demanda en daños y perjuicios contra el referido Hospital, y en contra de la aseguradora del mismo. En dicha demanda alegaron que la caída sufrida por la Sra. Lizardi González había ocurrido como consecuencia de *"la negligencia del personal del Hospital Episcopal San Lucas quienes no ejercieron el debido cuidado en su atención para con la paciente María Lizardi."*

Solicitaron, además, que los co-demandantes, los siete hijos de la Sra. Lizardi González, fuesen indemnizados por los daños emocionales sufridos, como consecuencia de haber visto sufrir a su madre con posterioridad a la referida caída. Por su parte, los demandados presentaron su contestación a la demanda y alegaron que los daños sufridos por la parte demandante, habían ocurrido como consecuencia de sus propios actos.

Tras varios trámites procesales, el Tribunal de Primera Instancia dictó sentencia declarando con lugar la demanda instada y condenó a la parte demandada a pagar la suma de $50,000.00 a la Sra. Lizardi González y $5,000.00 a cada uno de los siete hijos antes mencionados, por razón de los sufrimientos físicos y mentales experimentados como consecuencia de la negligencia del Hospital.

Inconforme con el dictamen del Tribunal de Primera Instancia, el Hospital acudió ante nos mediante el presente recurso de apelación y solicita la revocación de la sentencia apelada. Señala que el tribunal *a quo* cometió los siguientes errores:

*"1. Incurrió en error manifiesto el Honorable Tribunal de Primera Instancia al aquilatar la prueba en forma arbitraria, lo cual no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba presentada.*

*2. Incurrió en error el Honorable Tribunal de Instancia, al conceder una suma excesiva en daños a la parte demandante, indemnización que no está de conformidad con nuestro ordenamiento jurídico civilista."*

## II

En síntesis, los planteamientos de la parte apelante giran en torno a la apreciación de la prueba realizada por el Tribunal de Primera Instancia al imponerle responsabilidad por negligencia a la parte demandada y por la cuantía concedida a los demandantes en concepto de daños. La cuestión planteada exige que analicemos la prueba presentada ante el foro apelado.

Según se desprende de la transcripción de la vista en su fondo que obra en autos, dicha prueba consistió en el testimonio de once (11) testigos. Específicamente, testificaron los demandantes, la Sra. Lizardi González, Lady Rivera Lizardi, Sixto Rivera Lizardi, Carlos A. Rivera Lizardi, Milagros Rivera Lizardi, María Isabel Rivera Lizardi, Luis Rivera Lizardi, Rubén Rivera Lizardi; el perito de la parte demandante, Dr. Juan Llompart; la Sra. Lilliam Roche Escobar, enfermera en el Hospital (San Lucas de Ponce) y el Sr. Guillermo Almodóvar Quiles, Supervisor General del Hospital.

La Sra. Lizardi González testificó que el 13 de diciembre de 1993 había sido hospitalizada en el Hospital San Lucas con un diagnóstico de pulmonía. El 16 de diciembre de 1993, en horas de la madrugada, mientras ella dormía, llegó una enfermera para tomarle una muestra de sangre. Cuando la Sra. Lizardi González despertó la luz estaba prendida y la baranda de la cama no estaba colocada en su sitio. La paciente le indicó a la enfermera *"espere un momento en lo que voy al baño"*, pero la enfermera salió del cuarto al pasillo y se perdió de vista. Entonces la Sra. Lizardi González, colocó los pies en las chinelas y se puso de pie. En la mano derecha tenía puesto un suero y con la mano izquierda empujaba el carrito del suero (portasueros) en dirección al baño. Cuando entró al baño para prender la luz, y trató de entrar el carrito del suero, éste tropezó con un escalón en la entrada del baño. La Sra. Lizardi, se enredó en los cordones y cayó al piso. Luego de la caída, empezó a gritar y a quejarse y la otra paciente que ocupaba la misma habitación se despertó y buscó ayuda. A los diez u once minutos llegaron cuatro o cinco hombres, quienes la ayudaron a levantarse y la colocaron en la cama.

Los testimonios de los siete hijos de la Sra. Lizardi González estuvieron dirigidos a establecer tanto los sufrimientos físicos de su madre, como los propios y las angustias mentales que experimentaron al ver cuánto sufrió y sufre su madre como consecuencia del accidente. En lo pertinente, testificaron que los sufrimientos y dolor que experimentó su madre a raíz del accidente, también les había causado angustias y sufrimientos a ellos.

Lady Rivera Lizardi testificó que ella era la persona encargada de los asuntos médicos de su madre antes y después de la caída que ésta sufrió en el hospital. Ella fue la primera de los hijos que llegó al hospital luego del accidente. Junto a algunos de sus otros hermanos, estuvieron al lado de su madre en el momento en que le tomaron las radiografías, al trasladarla al Hospital de Damas, y luego en la habitación en la que se recuperaba de la operación. Testificó, además, que fue ella quien se encargó de acompañar a su madre a las terapias físicas y las citas médicas. Pudo percibir el dolor y el sufrimiento de su madre al recibir las terapias, lo que también le causaba angustia y sufrimientos mentales. El tener que acompañar a su madre, tanto a las citas médicas como en el hogar para que ésta pudiese asearse o realizar cualquier tarea simple en el hogar, le ha traído problemas en su vida personal. Las ausencias de su hogar para ocuparse de su madre, han afectado y siguen afectando la relación con su esposo y con sus hijas.

Sixto Rivera Lizardi testificó que llegó al Hospital en la mañana del día en que ocurrió el

accidente, luego de que una de sus hermanas le informó sobre lo ocurrido. Al llegar al hospital su madre se encontraba llorando, quejándose del fuerte dolor que sentía. Acompañó a su madre, junto con dos de sus hermanos Lady y Carlos, a que le tomaran las radiografías. El proceso de cambiarla de camilla fue uno muy doloroso para él ya que su madre se quejaba del fuerte dolor que sufría cuando intentaron moverla de una camilla o otra. El trámite para que se realizara la operación en el hombro a su madre estuvo lleno de tropiezos. Su madre sufrió mucho mientras esperaba a que se realizara la mencionada operación, ya que los calmantes que le administraron no le hicieron mucho efecto. Se siente triste, defraudado y para él todo este proceso ha sido uno deprimente, al ver a su madre quien antes del accidente era una persona jovial, que podía ocuparse de sí misma, y hacía fiestas familiares en su casa. Ahora, luego del accidente, al recibir a su familia, en las ocasiones en que se reúnen, siempre los recibe acostada, no puede abrazarlos, ni compartir con ellos como ella acostumbraba hacerlo.

De acuerdo con el testimonio de Carlos Rivera Lizardi, él presenció un cuadro similar al relatado por su hermano, Sixto Rivera Lizardi. Testificó que a consecuencia del accidente, su madre ya no puede cocinar, no puede bañarse, comer sola, ya que se derrama la comida encima. Senaló, además, que a pesar de que por razones de su trabajo, él solamente comparte con su madre los domingos cuando la visita, le ha afectado mucho verla acostada sin poder moverse, sin poder abrazarlo a él o a sus hijas.

Milagros Rivera Lizardi, testificó que estuvo acompañando a su madre en el Hospital las noches del 13 y 14 de diciembre de 1993. La noche del 15 de diciembre de 1993, a pesar de que tenía conocimiento de que nadie podía quedarse con ella esa noche, no pudo acompañarla debido a unas discusiones que tuvo con su esposo, quien le exigió su presencia en el hogar. Al igual que el resto de sus hermanos sufrió al ver el sufrimiento y dolor que experimentaba su madre a raíz del incidente, sin poder hacer nada para calmarla. Declaró, además, que a consecuencia del accidente, ha tenido que quedarse con su madre los fines de semana para acompañarla y esto le ha traído problemas con su esposo e hijos. La condición en que se encuentra su madre luego del accidente, le impide ocuparse de su hogar y de sus hijos como lo hacía antes del accidente, y esta situación le ocasiona problemas con su esposo.

María Isabel Rivera Lizardi, la menor de los hijos de la Sra. Lizardi González, al igual que sus hermanos sufrió angustias mentales al observar el dolor que sentía su madre como consecuencia del accidente. Aprendió a administrarle las terapias a su madre, a bañarla, alimentarla, y darle los medicamentos. Al ver a su madre llorando constantemente, aprendió a callar y ocultar el dolor y frustración que sentía para no afectar ni hacer sentir mal a su madre. Al igual que su hermana Milagros, ausentarse de su casa para atender a su madre le ocasiona problemas con su marido.

Luis Manuel y Rubén, ambos de apellido Rivera Lizardi, testificaron sobre el dolor emocional y las angustias mentales que sufrieron, y que aún sufren, debido al accidente y el posterior tratamiento al que ha sido sometida su madre. Luis Manuel testificó que, luego del accidente y la operación a la que fue sometida su madre, es él, a pesar de estar casado, quien se encarga de su madre, o sea, que la acompaña por las noches, los lunes, martes, miércoles y jueves. Ayuda a su madre para que pueda realizar sus funciones fisiológicas, su aseo personal y las labores del hogar. Como consecuencia de ello, comparte únicamente con su esposa los viernes, sábados y domingos, ocasionado muchos conflictos con su esposa.

El perito de la parte demandante, Dr. Juan Llompart, declaró sobre el examen médico que realizó a la Sra. Lizardi González con posterioridad a la caída. Testificó que a consecuencia del accidente que nos ocupa la Sra. Lizardi González sufrió una fractura de dislocación del hombro derecho. Al momento en que le realizó el examen médico, la Sra. Lizardi González presentaba un impedimento físico de un 50% de las funciones del hombro derecho que, a su vez, representaba y representa un impedimento físico de un 30% de sus funciones fisiológicas generales. Dada la edad de la Sra. Lizardi y el tiempo que ha transcurrido desde el accidente se debería considerar esta incapacidad como de carácter permanente.

En lo que respecta a las razones por las cuales la Sra. Lizardi fue hospitalizada originalmente, señaló que de acuerdo con los récords médicos, ella padecía de una bronquitis bronco-espástica.

Según surge del récord médico de admisión, anteriormente ella había tenido padecimientos cardíacos y mostraba un historial de artritis reumatoidea. Señaló que la operación a que fue sometida la Sra. Lizardi González en el Hospital se conoce como una artoplastía, que es una sustitución, una extracción de la cabeza del humero en la parte de la bola del hombro. Se le colocó una prótesis, una pieza metálica, en esa región para sustituir las partes afectadas. Los récords médicos demuestran que la condición actual de la Sra. Lizardi González presenta dolores diarios con limitaciones de movimiento del hombro derecho. Se encuentra total y permanentemente incapacitada para trabajar y vivir sola.

La parte demandada presentó el testimonio de la Sra. Lilliam Roche, una de las enfermeras de turno la noche del accidente. Testificó en lo pertinente, que alrededor de las cuatro de la mañana (4:00 AM) cuando pasaba junto a otra enfermera frente a la habitación de la Sra. Lizardi González, vio a ésta sentada en la cama. En ese momento la compañera le preguntó a la Sra. Lizardi que hacía sentada en la cama, y ésta le contestó que iba para el baño. Las enfermeras le dijeron que esperara un momentito en lo que ellas iban al "*counter*" a llevar muestras. Mientras estaban en el "*counter*" notaron una luz en el baño y corrieron hacia allá. Encontraron a la Sra. Lizardi González en el piso del baño enredada en los cables del portasueros. La ayudaron a levantarse y la colocaron en su cama. Avisaron al supervisor, el Sr. Almodóvar, y le explicaron lo ocurrido. El Sr. Almodóvar Quiles testificó que al llegar a la habitación de la Sra. Lizardi González, ella se encontraba en la cama y él le formuló una serie de preguntas para asegurarse que la Sra. Lizardi González estaba consciente. La Sra. Lizardi contestó las preguntas, y a solicitud del Sr. Almodóvar, le relató lo ocurrido.

### III

El Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, establece que el que por acción u omisión, mediante culpa o negligencia de su parte, causa daño a otro, tendrá la obligación de reparar el daño causado. La responsabilidad de los hospitales emana del Artículo 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5142, el cual hace responsable además a aquella persona o entidad que está en tal relación con el causante del daño que lo obliga a repararlo como si él lo hubiere causado. Carlos J. Irrizarry Yunqué, *Responsabilidad Civil Extracontractual*, 2d. ed. 1996, pág. 229. Sobre la responsabilidad de los hospitales hacia los pacientes, el Tribunal Supremo de Puerto Rico en *José J. Hernández Rivera v. Municipio de Bayamón*, **94 J.T.S. 68,** expresó lo siguiente:

*"Nuestro derecho vigente exige que los hospitales ejerzan el cuidado y las medidas previsoras que un hombre prudente desplegaría ante determinadas circunstancias y que ofrezcan a sus pacientes la atención médica que su condición requiera. Para determinar cuál ha de ser esta atención, puede servir de índice la práctica generalmente reconocida por la propia profesión médica." Crespo v. H.R. Psychiatric Hosp., ante.*

Las instituciones hospitalarias operan, y llevan a cabo su labor de servicio a sus pacientes, a través del personal médico, y paramédico, que labora en las mismas. En relación con esta situación, en *Núñez v. Cintrón,* 115 D.P.R. 598, 613.

*"En virtud del Artículo 1803 del Código Civil, 31 L.P.R.A. 5142, equivalente a la responsabilidad e incumplimiento de ese deber por el personal del hospital conlleva responsabilidad extracontractual de la institución hospitalaria frente al perjudicado. Roses v. Juliá, 67 D. P.R. 518 (1947)".*

Recientemente, el Tribunal Supremo de Puerto Rico reiteró que los hospitales tienen el deber y la obligación de ofrecer a sus pacientes el cuidado, la atención, y las medidas previsoras que un hombre prudente y razonable desplegaría en determinadas circunstancias. Los hospitales no son aseguradores contra todo daño imaginable, pero deben prestar al paciente la atención médica que su condición requiera y, ciertamente, son responsables por el daño que en las circunstancias particulares del caso pudo razonablemente haberse previsto y evitado. *Ivelisse Blas Toledo v. Hospital Nuestra Señora de la Guadalupe et als.,* ___ D.P.R. ___ (1998); **98 J.T.S. 101.**

Como ya hemos señalado, el deber y la obligación que tiene un hospital de ofrecer al paciente el cuidado y la atención razonable que las circunstancias exijan se miden por normas de razonabilidad y prudencia. Para ello pueden servir de índice las prácticas prevalecientes en la comunidad, entre las cuales resultan decisivas en cada caso las condiciones y la conducta específica del paciente, su

capacidad para cuidar de sí mismo, la información que realmente tenga el hospital sobre esas condiciones, conducta y capacidad y la que debe obtener si usa debidamente de la habilidad y experiencia de sus profesionales para constatarlas, y los peligros que existan en los alrededores. *Hernández v. La Capital,* 81 D.P.R. 1031 (1960).

Frente a la normativa antes expuesta, luego de un examen detenido y objetivo de la prueba antes reseñada, avalamos las expresiones vertidas por el foro apelado en su sentencia. Ciertamente, el cúmulo de hechos esenciales probados en el caso de autos permite concluir, por preponderancia de la prueba, que el accidente sufrido por la Sra. Lizardi González se debió a la omisión, por parte de las enfermeras de turno, de ofrecer la atención y cuidado que requería la demandante.

De los testimonios prestados por los testigos de la parte apelada, surge que la condición de salud de la Sra. Lizardi González, hacía imperativo que estuviera acompañada mientras iba al baño. Inclusive el supervisor Guillermo Almodóvar Quíles, testificó que si la paciente tenía que ir al baño, debió haber sido acompañada por una enfermera y que debió haberse concedido prioridad a esa tarea. En el contrainterrogatorio de la enfermera, la Sra. Lillam Roche y el supervisor, el Sr. Guillermo Almodóvar Quíles, surgieron numerosas inconsistencias entre las versiones de los hechos que constan en los récords del hospital y las versiones prestadas en la silla testifical. El Tribunal de Primera Instancia determinó en su sentencia que el testimonio prestado por la enfermera, Sra. Lilliam Roche, no le mereció credibilidad. Concluyó, que resultaba más creíble la versión de la demandante, de que fueron las enfermeras las que bajaron la baranda de la cama y luego la Sra. Lizardi se sentó. Cuando la demandante le dijo a las enfermeras que tenía que ir al baño, éstas decidieron ir hasta el *"counter"* para llevar las muestras. No impartieron instrucciones a la paciente y ninguna de las dos se quedó para acompañar a la paciente hasta el baño.

Es preciso destacar que al momento del accidente --que dicho sea de paso, ocurrió en la madrugada-- la Sra. Lizardi pesaba 228 libras y tenía 68 años de edad. Agréguese a ello su condición de salud y el hecho de que dependía de líquidos intravenosos para su tratamiento lo que hacía manifiesta la necesidad de que una de las enfermeras la acompañara al baño. Es menester poner de relieve, además, que en el área en que estaba convaleciendo la Sra. Lizardi había diecinueve (19) pacientes, en su mayoría ancianos, y que sólo había dos (2) enfermeras para cuidarlos.

Las normas de atención y cuidado son de mayor exigencia cuando el paciente acusa una condición física que le hace difícil cuidar de sí mismo. En tales ocasiones, dependiendo de las circunstancias específicas, puede exigirse al hospital la adopción de medidas precautorias adicionales a las ordinarias. *Hernández Rivera v. Gobierno de la Capital,* 81 D.P.R. 1031 (1960).

Es doctrina reiteradamente establecida que los tribunales apelativos, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendrán con la apreciación de la prueba. *Feliciano v. Supermercado Mr. Special,* **96 J.T.S. 6**; *Rodríguez Oyola v. Machado Díaz,* **94 J.T.S. 82**; *Coop. de Seguros Múltiples v. Lugo Torres,* **94 J.T.S. 77**; *Rodríguez Amadeo v. Santiago Torres,* **93 J.T.S. 106**. Ante tales circunstancias, coincidimos con el foro apelado en que la causa directa del accidente ocurrido se debió a la falta de atención y cuidado de las enfermeras hacia la demandante.

**IV**

Por otro lado, la parte apelante plantea que erró el foro de instancia al estimar y valorizar los daños sufridos por la parte demandante, razón por la cual, a su entender, debemos intervenir con la cuantía adjudicada.

La función de estimación y valorización de los daños físicos y mentales descansa en el juicio discrecional, sereno, prudente y razonable del juzgador de instancia. *Feliciano v. Supermercado Mr. Special, supra*; *Torres Solís v. Autoridad de Energía Eléctrica,* **94 J.T.S. 89**; *Toro Mercado v. P.R. & Amer. Ins. Co.,* 87 D.P.R. 658 (1963). De ordinario, respetaremos esa decisión y no intervendremos con la valorización realizada, ya que el foro de instancia se encuentra en mejor posición para evaluar los elementos visibles e intangibles. *Feliciano v. Supermercado Mr. Special, supra.* Asimismo, ha establecido el Tribunal Supremo que en caso de que la cuantía adjudicada en el foro de origen sea exageradamente alta o muy baja es legítimo que el tribunal apelativo intervenga para ajustarla. *Torres Solís v. Autoridad de Energía Eléctrica, supra.*

Según se desprende de la sentencia recurrida, así como de la prueba testifical y pericial que obra en autos, la Sra. Lizardi González ha sufrido intensos dolores físicos, no sólo por la caída sino también por las operaciones y terapias a las que ha tenido que ser sometida. Actualmente presenta una limitación en las funciones de su hombro derecho de un 50%, que a su vez se traduce en la pérdida de un 30% de sus funciones generales, con carácter permanente. Debido a los dolores que padece, la Sra. Lizardi González depende de sus hijos para llevar a cabo las labores del hogar, su higiene personal y hasta para hacer sus necesidades fisiológicas. Esto le produce grandes angustias y sufrimientos, ya que tampoco puede compartir con sus hijos y nietos las actividades según acostumbraban.

A la luz de la prueba presentada, y al amparo de la normativa antes expuesta, resolvemos que no existen circunstancias que ameriten que intervengamos con la valorización realizada por el foro sentenciador en lo que concierne a la cuantía concedida a la Sra. Lizardi González. En lo que concierne a los hijos de la Sra. Rivera resolvemos que la cuantía de $5,000.00 que le fue concedida es razonable y no se justifica que la modifiquemos. De la prueba presentada por las partes se desprende que era Lady Rivera Lizardi quien se ocupaba de la atención médica que necesitaba su madre. Luego de ocurrido el accidente, fue Lady Rivera Lizardi, la que con mayor frecuencia visitó el Hospital para acompañar y cuidar a su madre. Fue ella también la que se encargó de llevar y acompañar a su madre a las terapias físicas y a las citas médicas.

De igual forma, el co-demandante Luis Manuel Rivera Lizardi ha experimentado sufrimientos y angustias mentales toda vez que ha cuidado a su madre por las noches todos los lunes, martes, miércoles y jueves. Ayuda a su madre para que pueda realizar sus funciones fisiológicas, aseo personal y labores de la casa. Eso le impide compartir con su esposa al menos cuatro días a la semana, lo que le ha ocasionado muchos conflictos en su hogar.

En lo que atañe a la compensación concedida a los co-demandantes, Sixto, Carlos, Milagros, María Isabel, y Rubén, todos de apellidos Rivera Lizardi, de acuerdo con sus respectivos testimonios, los daños sufridos por ellos consistieron en los sufrimientos y angustias mentales que experimentaron al ver el sufrimiento de su madre como consecuencia del accidente, la operación a que fue sometida y su larga convalecencia, incluyendo la incapacidad que padece como resultado del referido accidente. Además, habían tenido que acompañarla y realizar las tareas del hogar. Ciertamente estas cuantías no resultan ser altas, por lo que no debemos alterar la determinación del Tribunal apelado.

De la prueba presentada surge una clara y apreciable disparidad entre el grado de participación que tuvieron los hijos de la Sra. Lizardi en lo que concierne a la atención y cuidados que dispensaron a su madre. No cabe duda que la participación de Lady y Luis Manuel fue más intensa que la de sus hermanos y hermanas. Por esa razón es forzoso concluir que su indemnización debiera ser mayor. No obstante, ellos no apelaron del dictamen que les concedió la cuantía de $5,000.00, y por ello no podemos modificarla.

## V

Por los fundamentos expuestos, se confirma la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General