Urgell Cuebas, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Mediante el recurso de autos, Aireko Construction Corp. (Aireko) y Velco Vehicle Equipment Leasing Co. (Velco) nos solicitan que revisemos la sentencia emitida el 6 de mayo de 1998 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la misma, dicho foro declaró con lugar una demanda de daños y perjuicios instada por el Sr. José Figueroa Rivera y las Sras. Olga Rivera Quiñones y Josefa Rivera Quiñones, tía y madre del primero, respectivamente, contra Aireko y Velco. En su dictamen, el tribunal condenó a las demandadas al pago de diversas sumas a favor de los demandantes por concepto de daños físicos, sufrimientos y angustias mentales y daños económicos.
Ante nos, Aireko y Velco alegan que las cuantías concedidas son exageradamente altas, además impugnan las sumas otorgadas a los demandantes, Sr. Figueroa Rivera y Sra. Rivera Quiñones, por concepto de lucro cesante.
Examinado el recurso, procedemos a modificar la suma otorgada a la Srá. Olga Rivera por concepto de sufrimientos, angustias mentales y daños físicos. Además, dejamos sin efecto las sumas concedidas por lucro cesante al Sr. Figueroa Rivera y a la Sra. Josefa Rivera, ya que no se conforman a los criterios establecidos en la jurisprudencia para su determinación. Se procede, además, a devolver el asunto al Tribunal de Primera Instancia para que se dilucide y otorgue allí, a base de la correspondiente evidencia, la controversia conforme a los pronunciamientos que más adelante se exponen.
I
Los hechos que dan origen al caso que nos ocupa tuvieron lugar el 30 de mayo de 1992. Ese día, la Sra. Olga Rivera y su sobrino, Sr. Figueroa Rivera, transitaban por la Carretera Núm. 2 en el área de Manatí, en dirección de Arecibo a Vega Baja, cuando el auto en que viajaban, un Nissan Sentra, modelo de 1989, propiedad de la Sra. Rivera, fue impactado por otro vehículo en la parte posterior. Este último vehículo, propiedad de Velco, era conducido por el Sr. Roberto Cabassa, empleado de Aireko, compañía que había arrendado el mismo a Velco.
*1097 Como consecuencia del impacto, el auto de la Sra. Rivera Quiñones impactó a su vez al vehículo que se encontraba frente a ella y continuó en movimiento hasta detenerse en una pequeña loma a un lado de la carretera.
Según consideró probado el Tribunal de Primera Instancia, el accidente causó serias lesiones al Sr. Figueroa Rivera, quien en ese momento tenía 23 años de edad y trabajaba como asistente de albañil. Las lesiones determinadas por los médicos que examinaron al Sr. Figueroa Rivera fueron: hemiación discal L4-L5, esguince cervicodorsolumbar, estiramiento de la lordosis fisiológica cervicodorsolumbar y exacerbación de una condición pre-existente de epilepsia. Estas lesiones requirieron unas 36 sesiones de terapia, luego de las cuales el Sr. Figueroa Rivera todavía no se encuentra recuperado en su totalidad. Por otro lado, la Sra. Olga Rivera, quien conducía el vehículo al momento del accidente, también recibió lesiones cervicales que requirieron tratamiento médico. El auto Nissan Sentra resultó en pérdida total.
La Sra. Olga Rivera, el Sr. Figueroa Rivera y la madre de este último, Sra. Rivera Quiñones, instaron el 28 de septiembre de 1992 una demanda contra Aireko, Velco y las aseguradoras de ambas compañías. En la misma, reclamaron compensaciones monetarias por daños y perjuicios físicos, angustias mentales, así como por los daños del vehículo de la Sra. Olga Rivera. También reclamaron lucro cesante. Velco y Aireko contestaron oportunamente la demanda, negando haber incurrido en actos negligentes.
El Tribunal de Primera Instancia celebró la vista del caso en su fondo los días 5, 6 y 9 de febrero de 1996. A la misma comparecieron como testigos los demandantes, Dr. Carlos Grovas, el Dr. Juan Llompart y el Sr. José A. Rodríguez. El Dr. Grovas compareció como perito de los demandantes, mientras que el Dr. Llompart hizo lo mismo por parte de los demandados. El Sr. Rodríguez compareció como investigador forense de los demandados.
El 6 de mayo de 1998, el Tribunal de Primera Instancia emitió la sentencia aquí apelada. En la misma, declaró con lugar la demanda contra Velco y Aireko, condenando a éstas al pago de las siguientes sumas:

“(1) Sr. José Figueroa Rivera- $70,000 por daños físicos e incapacidad, $50,000 por sufrimientos y angustias mentales y $172,300 por daños económicos (incluyendo lucro cesante);

(2) Sra. Olga Rivera Quiñones- $35,000 por sufrimientos y angustias mentales y $1,000 por daños económicos;

(3) Sra. Josefa Rivera Quiñones- $10,000 por sufrimientos y angustias mentales y $15,000 por daños económicos. ”

El Tribunal de Primera Instancia señaló que estas sumas fueron otorgadas, luego de realizar las correspondientes deducciones bajo la Ley de Protección Social por Accidentes de Automóviles, 9 L.P.R.A. secs. 2051 et seq. Finalmente, la sala sentenciadora concluyó que las demandadas habían actuado de forma temeraria al negar su responsabilidad, aunque posteriormente hicieran una admisión parcial de negligencia, por lo que les impuso el pago de $2,000 de honorarios de abogado.
Oportunamente, Velco y Aireko presentaron una moción solicitando determinaciones de hecho adicionales, la cual fue declarada sin lugar por el Tribunal de Primera Instancia mediante orden emitida el 11 de junio de 1998 y notificada el día siguiente.
No conformes con la sentencia, Velco y Aireko presentaron el recurso de apelación que aquí nos concierne. *1098 En el mismo solicitan revisión de la sentencia emitida, alegando que Tribunal de Primera Instancia cometió tres errores, a saber:

“(1) conceder cuantías exageradamente altas como indemnización por los daños y perjuicios sufridos por los demandantes; (2) conceder partidas de lucro cesante excesivamente altas y sin apoyo en la prueba al Sr. José Figueroa y a la Sra. Josefa Rivera; y (3) al condenar a las demandadas al pago de honorarios de abogado. ”

Luego de múltiples trámites procesales, las apelantes presentaron ante nos una transcripción de la vista en su fondo celebrada ante el Tribunal de Primera Instancia. Finalmente, los apelados presentaron su alegato en oposición el pasado 1ro de noviembre de 1999, por lo que estamos en posición de resolver.
II
Como es sabido, en nuestra jurisdicción rige la norma fundamental de derecho que obliga a toda aquella persona que cause un daño, mediando en tal acto culpa o negligencia, a resarcir el daño causado. Código Civil, Art. 1802, 31 L.P.R.A. sec. 5141. Según ha señalado nuestro Tribunal Supremo, el concepto de culpa del Art. 1802 es tan amplio y abarcador como suele ser la conducta humana, por lo que es prácticamente infinita la variedad de actos que pueden conllevar aparejada la responsabilidad civil. Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305, 310 (1970).
Para que exista responsabilidad civil bajo este artículo, es necesario que concurran tres elementos indispensables: un daño, una acción u omisión negligente y una relación causal entre el daño y la conducta culposa o negligente. Ramírez Salcedo v. E.L.A., 140 D.P.R. _ (1996), 96 J.T.S. 41, a la pág. 866; Tormos Arroyo v. D.I.P., 140 D.P.R. _ (1996), 96 J.T.S. 34, a la pág. 806.
Una vez un tribunal determina que, dentro de los hechos particulares de un caso, están presentes los elementos necesarios para adjudicar responsabilidad civil a una parte, procede entonces determinar el valor pecuniario de los daños causados. Se trata de una tarea de gran complejidad, pues, al no ser el dolor y el sufrimiento objetos con precio determinable en términos de dinero, entran en la consideración del juzgador numerosos elementos de carácter subjetivo. Sobre este importante aspecto de la función judicial, el Tribunal Supremo señaló en Riley v. Rodríguez Pacheco, 119 D.P.R. 762 (1987):
“... [A]l adjudicar daños estamos conscientes que el dolor humano (físico y espiritual) no es similar ni pecuniariamente cotizable. El dinero y el dolor “son bienes de tan distinta categoría que no cabe comparación. Pero si el dinero no es suficiente para reparar este tipo de daños, es preferible que la víctima reciba una indemnización insuficiente a que no reciba ninguna. Por tanto, aunque el dinero no pueda ser parangonado con el dolor, es posible proporcionar a la víctima una compensación que, sin llegar a devolverle lo perdido, le permita procurarse placeres y satisfacciones, psíquicas o mentales, aptas para atenuar el dolor sufrido”. ... [Ljlevados a sus extremos reales, los sufrimientos mentales y físicos son cuantificables al infinito. Sin unos límites razonables, la indemnización dejaría de tener la característica de resarcimiento para convertirse en una punitiva. ... Valga aclarar que esta “interpretación no debe tomarse como menosprecio a la realidad y honestidad de [los] sufrimientos”. Riley v. Rodríguez Pacheco, supra, a la pág. 804 (citas omitidas).
En cuanto a la revisión en apelación de las cuantías de daños otorgadas por el tribunal de instancia, la norma que rige en nuestra jurisdicción fue repetida recientemente por el Tribunal Supremo en Blás Toledo v. Hosp. Guadalupe, 146 D.P.R. _ (1998), 98 J.T.S. 101, a las págs. 1438-1439:
"... [L]a gestión judicial de estimación y valoración de daños es una difícil y angustiosa, no existiendo un *1099 sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Rodríguez Cancel v. E.L.A., 116 D.P.R. 443, 451 (1985); Urrutia v. A.A.A., 103 D.P.R. 643 (1975). Hemos reconocido el hecho, en relación con esta difícil y angustiosa labor, que, de ordinario, los tribunales de instancia están en una mejor posición que los tribunales apelativos para evaluar la situación. Ello así, por cuanto éstos son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. Publio Díaz v. E.L.A., 106 D.P.R. 854 (1978). Ahí la razón para la norma de abstención judicial. Es decir, que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. Valdejuli Rodríguez v. A.A.A., 99 D.P.R. 917 (1971); Urrutia v. A.A.A., ante. Además, la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia, viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978); Rodríguez Cancel v. E.L.A., ante. ”
En casos como el de autos, donde la prueba pericial tuvo un considerable peso sobre las determinaciones del Tribunal de Primera Instancia, debemos establecer cuáles son los criterios que, como foro apelativo, utilizamos para analizar dicha evidencia.
Reconocemos que los foros de primera instancia están en mejor posición que los foros apelativos para evaluar la situación, pues tienen contacto directo con la prueba. De aquí la norma que señala que los foros apelativos no intervendrán con las determinaciones de instancia, incluyendo aquellas relativas a las cuantías concedidas. Ahora bien, en el ejercicio de nuestra facultad revisora, los foros apelativos tenemos amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándonos en la misma posición que los tribunales de primera instancia y pudiendo aun adoptar nuestro propio criterio en la apreciación de la misma. Martí Méndez v. Abréu Feshold, 143 D.P.R. _ (1997), 97 J.T.S. 99, a la pág. 1232; Ramos Robles v. García Vicario, 134 D.P.R. _ (1993), 93 J.T.S. 167, a la pág. 11397; Ríos Ruiz v. Mark, 119 D.P.R. 816, 820 (1987).
Examinadas las normas que guían nuestra labor revisora, pasamos a examinar los méritos del recurso.
III
Como primer señalamiento de error, alegan las apelantes que incidió el Tribunal de Primera Instancia al conceder cuantías exageradamente altas como indemnización por los daños y perjuicios sufridos por los demandantes. Al efecto, y sobre los daños que sufrió el demandante, Sr. Figueroa Díaz, las apelantes traen a nuestra atención los casos de Ruiz Guardiola v. Sears Roebuck, 100 D.P.R. 817 (1982); Resto v. Colón, 112 D.P.R. 644 (1982) y Saurí Rodríguez v. Colón Martínez, 127 D.P.R. 900 (1991), como precedentes que demuestran el carácter excesivo de los daños concedidos por el Tribunal de Primera Instancia.
En primer lugar, debemos recordar que las cuantías concedidas por el Tribunal Supremo en casos similares al de autos no son obligatorias o vinculantes para el Tribunal de Primera Instancia. Como señaló el Tribunal Supremo en Ruiz Guardiola v. Sears Roebuck, supra:
“La estimación de daños depende de las circunstancias concurrentes. Así no puede adoptarse como regla fija y antecedente obligatorio lo resuelto en casos específicos. Vda. de Silva v. Auxilio Mutuo, 100 D.P.R. 30 (1971); Goose v. Hilton Hotels, 79 D.P.R. 523 (1956); Baralt v. Báez, 78 D.P.R. 123 (1955); Sánchez v. Sucn. J. Serrallés, 53 D.P.R. 80 (1938). La estimación de los daños, especialmente por sufrimientos físicos y angustias mentales, es una función que descansa en la sana discreción del juzgador, Santaella Negrón v. Licari, 83 D.P.R. 887 (1961), y conlleva el ánimo de reparar al perjudicado y sin el propósito de castigar a su causante. Toro Mercado v. P.R. & Amer. Ins. Co., 87 D.P.R. 658 (1963); Rivera v. Rossi, 64 D.P.R. 718 *1100 (1945).”
Ruiz Guardiola v. Sears Roebuck, supra, a la pág. 824 (nota 4). Véase, además, Toro Aponte v. E.L.A., 142 D.P.R. _ (1997), 97 J.T.S. 18, a la pág. 629; Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 327 (1990); Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 452 (1971).
Un análisis de los daños sufridos por el Sr. Figueroa Díaz demuestra que las sumas concedidas a éste por el Tribunal de Primera Instancia no son exageradas. Según el informe médico preparado por el Dr. Carlos Gravas, al cual el tribunal a quo dio entera credibilidad, el demandante padece de estiramiento de las lordosis fisiológicas cervical, dorsolumbar y lumbar, las que sugieren espasmos y dolores, y una hemiación discal (L4-L5). Según este galeno, el Sr. Figueroa Rivera adolece de impedimento parcial permanente en un 35% de las funciones fisiológicas generales, además de una exacerbación de su condición pre-existente de epilepsia, todo ello atribuible al accidente del 30 de mayo de 1992. Además, de acuerdo al testimonio vertido en la vista del caso, la incapacidad del Sr. Figueroa Rivera ha generado un estado de depresión, causada por su incapacidad para desempeñar normalmente sus labores cotidianas. Ante este cuadro fáctico, las sumas concedidas por el Tribunal de Primera Instancia ($70,000 por daños físicos e incapacidad y $50,000 por sufrimientos y angustias mentales) no son exageradas.
Según las apelantes, los $70,000 otorgados en el caso de autos por daños físicos sobrepasan por mucho los $40,000 concedidos por el Tribunal Supremo en Ruiz Guardiola v. Sears Roebuck, supra, a una persona con un 50% de impedimento de sus funciones fisiológicas generales. Sin embargo, debemos recordar que el caso de Ruiz Guardiola, supra, fue resuelto en 1972, hace más de veinticinco (25) años. De hecho, el Ledo. Antonio J. Amadeo Murga, en su obra El Valor de los Daños en la Responsabilidad Civil, T.II, Editorial Esmaco, San Juan, 1997, a la pág. 586, estima que $40,000 concedidos en 1972 equivaldrían aproximadamente a $161,818 en el año 1995.
Los demás casos citados por los apelantes también adolecen del defecto de haber sido resueltos hace ya varios años (1982 y 1991), por lo que las sumas concedidas en éstos no son comparables o aplicables al caso de autos.
En lo que respecta a las sumas concedidas a las Sras. Olga y Josefa Rivera Quiñones, la prueba examinada por el Tribunal de Primera Instancia demostró que éstas también sufrieron daños de diversa índole. La Sra. Josefa Rivera Quiñones, madre del Sr. Figueroa Rivera, se vio obligada a abandonar temporeramente su trabajo para atender a su hijo, además de sufrir el serio impacto emocional de verlo sumido en una condición de incapacidad física seria. Entendemos que la suma concedida por el Tribunal de Primera Instancia a la Sra. Josefa Rivera ($10,000) no se aparta de lo razonable para este tipo de caso, por lo que no intervendremos con la misma. Blás Toledo v. Hosp. Guadalupe, supra.
Ahora bien, la suma de $35,000 concedida a la Sra. Olga Rivera es claramente exagerada, cuando consideramos que ésta sólo sufrió un espasmo cervical que le causó severos dolores “por algunas semanas” y se ausentó de su trabajo por dos semanas. No se alegó que la Sra. Olga Rivera sufriera daños físicos de carácter permanente. Por tales razones, estimamos que la suma concedida a esta demandante por concepto de sufrimientos y angustias mentales debe ser reducida a $12,000. 
Como segundo señalamiento de error, alegan las apelantes que incidió el Tribunal de Primera Instancia al conceder partidas de lucro cesante excesivamente altas y sin apoyo en la prueba al Sr. José Figueroa y a la Sra. Josefa Rivera Rivera. En Velázquez v. Ponce Asphalt, 113 D.P.R. 39, 48 (1982), el Tribunal Supremo, citando a Santos Briz, definió el lucro cesante de la siguiente forma:

*1101
“El lucro cesante se trata de un perjuicio sufrido que consiste en una ganancia futura frustrada que con cierta probabilidad era de esperar según el curso normal, ulterior de las cosas. El perjudicado no tiene que demostrar con certeza absoluta que se habrían realizado las ganancias. Para distinguir entre un interés verdadero y uno inseguro o incierto, hay que distinguir entre la mera posibilidad y la probabilidad de una ganancia futura teniendo en cuenta que tal vez en algún caso sea indemnizable la mera posibilidad.... ”,

El demandante tiene el peso de la prueba a los fines de establecer su reclamación de lucro cesante.
En Rodríguez v. Ponce Cement Corp., 98 D.P.R. 201, 218-219 (1969), el Tribunal Supremo expuso:

“Corresponde al demandante establecer la pérdida de ingresos hasta la fecha de la vista de la causa, generalmente mediante la sencilla prueba de la reducción en los mismos atribuible a causas originadas por el accidente; la disminución en la capacidad productiva requiere una proyección futura del efecto de los daños. No hay regla fija para estimar el importe de la disminución en la capacidad productiva; cuando menos sé requieren tres determinaciones básicas: (a) la extensión de la mengua en la capacidad productiva, que ordinariamente se establece mediante una comparación de la habilidad para obtener ingresos antes y después del accidente; (b) la determinación de los efectos de la disminución, si transitoria o permanente; y (c) la fijación de la suma que compensa por esta disminución, considerando, tanto su extensión como sus efectos, incluyendo la actualización de la pérdida (present net worth). No es necesario que la prueba demuestre con precisión matemática los daños causados por este concepto; basta con que se ofrezca una base razonable que permita hacer una determinación prudente, y no hija de la especulación y la conjetura. ”

En el caso de autos, la prueba presentada por el demandante, Sr. Figuefoa Rivera, para demostrar los ingresos que generaba antes del accidente, se limitó a su declaración durante el juicio de que laboraba como asistente de albañil, lo que le proporcionaba un salario de aproximadamente $175 a $200 semanales. El Dr. Gravas, por su parte, testificó que el Sr. Figueroa Rivera no podría realizar más ese tipo de trabajo. Ahora bien, también desfiló prueba de que la incapacidad del Sr. Figueroa Rivera.no era absoluta, y que éste podía realizar ciertas labores, siempre y cuando las mismas no requiriesen estar sentado por mucho tiempo. A esos efectos, y cuando fue interrogado por el representante legal de los demandantes, el Dr. Gravas señaló:

“Bueno, yo entiendo que [el Sr. Figueroa Díaz] puede hacer ciertas gestiones. Yo a lo que me he referido es que el tipo de oficio que él habitualmente efectuaba puede exacerbar la condición que él adolece. Ahora, no es una condición donde él tenga que estar continuamente acostado o sentado viendo televisión. El tiene limitaciones en tirar, halar, cargar objetos que pesen más de 15 libras de peso; estar acuclillado, arrodillado; o usualmente utilizando las extremidades inferiores para movimientos repetitivos como los de manejar. Pero no tiene que estar continuamente acostado, ni tiene que estar sentado viendo televisión. O sea, él puede hacer ciertas gestiones, basándonos en su condición clínica. ”

Más adelante, el Dr. Gravas añadió:

“El tiene uso de sus extremidades superiores. El podría ejercer oficios sedentarios, sentado, alternando con posiciones parado, donde no tenga que estar cargando objetos que pesen más de 15 libras de peso, repetitivamente, en el horario acostumbrado de 8 horas al día. ”

Por su parte, el Dr. Llompart, perito de los demandados, hizo declaraciones similares. Véase, la transcripción de la vista en su fondo del día 6 de febrero de 1996, a la pág. 90. El Tribunal de Primera Instancia tomó en consideración esta información y determinó que la incapacidad del Sr. Figueroa Rivera no era total. A esos efectos, la sentencia recurrida dispuso:
*1102 “Los daños del Sr. Figueroa acarrean un impedimento parcial permanente del 35% de sus funciones fisiológicas generales, habiendo desempeñado el Sr. Rivera [sic] el oficio de albañil o ayudante de construcción, por lo cual este Tribunal concluye que el Sr. Rivera [sic] ha sufrido una merma en su capacidad para ganarse la vida, teniendo efectivamente un lucro cesante. Considerando que, conforme al testimonio del Dr. Grovas, el Sr. Figueroa pudiese quizás realizar trabajos en una posición sentado, debemos concluir que su impedimento laboral no es total. Sin embargo, debemos también reconocer la realidad de que un humilde albañil no tiene buenas probabilidades de encontrar y mantener un trabajo donde se pueda desempeñar sentado, máxime si aun estando sentado es probable que su condición le provoque dolores. En tal virtud, concluimos que el Sr. José Figueroa es acreedor de un 50% de su ingreso de $175 por semana en concepto de lucro cesante hasta su edad de retiro, lo que equivaldría a la cantidad de $174,300. Véase lo resuelto en Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982); Suro v. E.L.A., 111 D.P.R. 456 (1981); Rodríguez v. Ponce Asphalt, 98 D.P.R. 201 (1969).”
Ahora bien, lo resuelto por el Tribunal de Primera Instancia se aparta de la doctrina y procedimientos establecidos por nuestro Tribunal Supremo, particularmente en los mismos casos que cita en su sentencia. Para concluir que existe una merma en los posibles ingresos que un demandante puede recibir debido al daño que le ha causado el demandado, es necesario examinar la diferencia entre los ingresos que antes éste generaba y los que puede generar prospectivamente. La suma obtenida, además, debe ser traída a un valor presente, para compensar por el efecto del paso del tiempo sobre el valor del dinero. Véase, Rodríguez v. Ponce Cement Corp., supra, a las págs. 218-219. La determinación de estas cantidades es materia que usualmente requiere la presentación de prueba pericial por economistas y técnicos de rehabilitación laboral. Véase, Demetrio Fernández y Carlos E. Toro, El lucro cesante en materia de responsabilidad civil extracontractual: la confusión de la Torre de Babel, 52 (1), Rev. Jur. U.P.R. 31 (1982); Ronald Martínez Cuevas, El estimado del valor del lucro cesante por muerte o incapacidad en Puerto Rico, 64 (1), Rev. Jur. U.P.R. 75 (1995); Ronald Martínez Cuevas, El estimado de pérdidas de ingreso personales y el lucro cesante: una metodología, 59 (1), Rev. Col. Abog. P.R. 100 (1998).
El caso de autos es muy similar al resuelto por el Tribunal Supremo en Feliciano Polanco v. Feliciano González y otros, 147 D.P.R. _ (1999), 99 J.T.S. 23 (Sentencia de 17 de marzo de 1999). En éste, se trataba de un obrero de la construcción, Sr. Wilson Feliciano Polanco, que fue impactado por un automóvil perteneciente al Municipio de Utuado. A raíz de ese accidente, el Sr. Feliciano Polanco sufrió lesiones en una rodilla que requirieron considerable tratamiento médico (incluyendo cirugía y terapias), lo que le impedía desempeñarse nuevamente en el área de la constmcción como lo hacía antes del accidente. Sin embargo, podía caminar, correr bicicleta, subir y bajar escaleras y practicar algunos deportes. Al momento del accidente, el Sr. Feliciano Polanco tenía 34 años de edad, había estudiado hasta el décimo grado y devengaba el salario mínimo federal ($5.25 por hora).
El Sr. Feliciano Polanco instó una demanda, que fue declarada con lugar. El desaparecido Tribunal Superior valoró los daños físicos, sufrimientos y angustias mentales del demandante en $50,000 y calculó su lucro cesante en $101,403.74, pues consideró que éste no podría obtener otro empleo. Los demandados recurrieron al Tribunal Supremo, alegando que las cuantías concedidas eran exageradas.
Dicho Foro confirmó, con modificaciones, la sentencia recurrida. Ahora bien, en cuanto al lucro cesante, concluyó que la sala sentenciadora había errado al determinar que el demandante no podría trabajar nuevamente. Sobre el particular, dispuso:

“...[EJntendemos que el tribunal cometió un error manifiesto al evaluar la prueba que le llevó a determinar que el señor Feliciano no podía conseguir otro empleo que no fuera como obrero de la 
*1103
construcción. Ello es así, ya que el propio demandante, señor Feliciano, admitió que ha realizado, otras tareas que no son de albañil, como por ejemplo, en la Ferretería Martínez y en una fábrica en los Estados Unidos. Además, ni el demandante, ni los demás testigos declararon que el señor Feliciano estuviera incapacitado para realizar otras tareas remuneradles. ”

Por otro lado, no hay duda de que el demandante dejó de devengar ingresos durante el tiempo en que estuvo hospitalizado y en recuperación, lo cual debió haber sido computado y concedido por el tribunal do instancia en su sentencia. Asimismo, el tiempo que le tome conseguir otro trabajo, incluyendo cualquier período de readiestramiento para ello, y el hecho de que sus posibilidades de empleo futuro pudieran ser únicamente en trabajos de menor remuneración que su antigua ocupación de albañil, constituirían pérdidas que de haber sido probadas, deben compensarse como parte del lucro cesante.
Procede, pues, devolver este asunto al tribunal de instancia para que se dilucide allí, a base de la correspondiente evidencia, la controversia respecto a la reducción real de ingresos y el lucro cesante del demandante conforme a los pronunciamientos que anteceden.
De igual forma, en el caso de autos debemos concluir que el Tribunal de Primera Instancia incidió al hacer una determinación de lucro cesante sin considerar en su cómputo todos los criterios necesarios. Si bien el Sr. Figueroa Rivera debe ser compensado por el tiempo que estuvo bajo tratamiento médico, imposibilitado de trabajar, y por el período que le pudiese tomar conseguir un nuevo empleo, incluyendo cualquier período de readiestramiento, también es cierto que éste puede realizar otras tareas remuneradas que deben tenerse en cuenta para el cómputo del lucro cesante. Por ende, la cuantía concedida por concepto de lucro cesante en el caso de autos al Sr. Figueroa Rivera debe ser revisada tomando en consideración estos factores. Procede que devolvamos el caso al Tribunal de Primera Instancia para que en éste se dilucide, a base de la correspondiente evidencia, la controversia respecto a la reducción real de ingresos y el lucro cesante. 
En cuanto a la suma de $15,000 concedida a la demandante, Sra. Josefa Rivera, como daños económicos, concluimos que la misma no está sostenida por la prueba aportada. Durante la vista del caso en su fondo, efectuada en febrero de 1996, y al momento de preguntársele cuándo había dejado de trabajar, la Sra. Rivera declaró “como aproximadamente dos años”. Transcripción de la vista del 9 de febrero de 1996, a la pág. 50. De aquí se desprende que durante los dos años posteriores al accidente, ocurrido en marzo de 1992, la Sra. Rivera continuó trabajando, excepto por un espacio de dos semanas después del accidente que su patrono le concedió como licencia para cuidar a su hijo. Por otro lado, tampoco se probó que existía una verdadera necesidad de que la Sra. Rivera permaneciere constantemente al cuidado de su hijo, impidiéndole trabajar. Esta determinación es cónsona con nuestra conclusión anterior de que el Sr. Figueroa Rivera no está totalmente incapacitado y es capaz de cuidar de sí mismo.
Debemos concluir que incidió el Tribunal de Primera Instancia al otorgar la suma de $15,000 como lucro cesante a la demandante Sra. Josefa Rivera, ya que la misma no es representativa de los ingresos que dejó de percibir ésta como cuestión de hecho, y no se desprende cuál fue la base que tomó el tribunal para llegar a dicha suma. Procede que revoquemos esta partida y devolvamos el recurso al tribunal a quo para que determine la compensación que corresponda a la Sra. Rivera, únicamente por las dos semanas que dejó de trabajar luego del accidente.
Finalmente, como tercer señalamiento de error, alegan las apelantes que incidió el Tribunal de Primera Instancia al condenarles al pago de honorarios de abogado. Sobre este particular, señalan que Velco y Aireko hicieron una admisión parcial de negligencia, por lo cual no incurrieron en temeridad.
*1104 La Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), dispone que “en caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”
Elaborando sobre el principio detrás de esta regla, el Tribunal Supremo señaló en Fernández Mariño v. San Juan Cement Co., 118 D.P.R. 713, 718-719 (1987) (citas omitidas):
“El propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia -2 insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. Hemos señalado que la acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar; que lo prolongue innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables. Como ejemplo, hemos resuelto que existe temeridad si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente, o si se defiende injustificadamente de la acción; si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida. Como dijimos en Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 739-740 (1984), si “[s]e arriesgó a litigar un caso del que se desprendía prima facie la negligencia.... Debe asumir, pues, la responsabilidad por sus actos”. ... Negar un hecho que le consta es cierto al que hace la alegación, también constituye temeridad.
El caso de autos trataba de un simple choque de vehículos (“rear end collision”), que no ameritaba cuatro años de litigio ante los tribunales. Sin embargo, las demandadas negaron su responsabilidad (segundo párrafo de su Contestación a la Demanda, Apéndice del Recurso, a la pág. 45) y alegaron la negligencia comparada de los demandantes, cuando a todas luces la misma era improcedente. Además, la “Admisión parcial de negligencia” de 31 de enero de 1996 se produce más de tres años después de instada la demanda. Estos hechos nos llevan a concluir que el Tribunal de Primera Instancia no abusó de su discreción al imponerle el pago de honorarios de abogado a las apelantes. Raoca Plumbing v. Trans World, 114 D.P.R. 464, 468 (1983). El tercer error señalado no fue cometido.
IV
Por los fundamentos anteriores, se modifica la sentencia emitida el 6 de mayo de 1998 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, para reducir la cuantía concedida a la Sra. Olga Rivera Quiñones por concepto de sufrimientos y angustias mentales, de $35,000 a $12,000. Se dejan, además, sin efecto las cuantías concedidas por lucro cesante al Sr. José Figueroa Rivera y a la Sra. Josefa Rivera Quiñones y se devuelve este asunto al Tribunal de Primera Instancia para que se dilucide y otorguen las compensaciones que correspondan, conforme antes expuesto. Así modificada, se confirma la sentencia en todos los otros extremos.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General. La Jueza Cotto Vives disiente sin opinión.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 78
1. A la Sra. Olga Rivera, el tribunal le concedió la suma de $1,000 como daños económicos debido a la pérdida del *1105 vehículo de su propiedad objeto del accidente. Esta partida, aunque los apelantes la señalaron como error, no la discuten en el cuerpo de su escrito apelado. No tenemos base para revocar o modificar la misma.
2. Debemos notar que el demandante, según sus propias declaraciones, recibía un sueldo semanal de $200, lo que se aproxima al salario mínimo federal ($5.25 x 40 horas = $210). De determinarse que el demandante puede realizar otro trabajo acorde con sus limitaciones, por 40 horas semanales y devengando el salario mínimo, éste no tendría derecho a compensación por lucro cesante. Este asunto, por supuesto, queda sujeto a la prueba recibida por el Tribunal de Primera Instancia. Finalmente, no debemos olvidar que el Sr. Figueroa Rivera posee estudios hasta el cuarto año de escuela superior, lo que ciertamente le califica como persona preparada para diversas tareas remuneradas.