Cordero, Juez Ponente
*739 TEXTO COMPLETO DE LA SENTENCIA
El 3 de febrero de 2003, el Estado Libre Asociado de Puerto Rico (E.L.A.) presentó recurso de Apelación y nos solicitó revisión de la Sentencia emitida el 6 de noviembre de 2002, notificada el 5 de diciembre de 2002, por el Tribunal de Primera Instancia ("7!P7"), Sala Superior de San Juan. El 11 de marzo de 2003, el apelante presentó "Moción Notificando Resolución", indicándonos que el 14 de enero de 2003, el TPI había emitido Sentencia concediendo la partida de honorarios de abogado solicitada por Díaz. Aclaró, que por los mismos fundamentos esgrimidos en su escrito de Apelación, entendía que dicha partida era improcedente en derecho. El 27 de abril de 2003 Ralffy Díaz Reyes ("Díaz") presentó su escrito de oposición al recurso de Apelación.
Con el beneficio de la comparecencia de ambas partes y luego de resolver varias mociones interlocutorias, estamos en posición de resolver el caso en sus méritos. Veamos los hechos del caso.
I
El apelado, Ralffy Díaz Reyes, comenzó a trabajar como Agente para la Policía de Puerto Rico ("Policía") en el año 1987. El 16 de agosto de 1998, Díaz sufrió un accidente de tránsito, a consecuencia del cual se le amputó su pierna derecha a un nivel más arriba de la rodilla. A la fecha del accidente, Díaz estaba asignado como Agente en la Unidad de Impacto del área de San Juan (" Unidad") devengando un salario de $1,600.00 dólares mensuales. Como resultado del accidente, Díaz estuvo hospitalizado durante dos (2) meses para cirugía y tratamiento. Se le recomendó una prótesis hidráulica con función de rodilla y terapias físicas. Dicha condición lo limitó sustancialmente en la ejecución de una o más actividades del diario vivir; lo incapacitó permanentemente.
El 29 de enero de 1999, luego de ser dado de alta de su tratamiento, Díaz solicitó su reinstalación como Agente en la Policía mediante un acomodo razonable. A tales efectos, el Director Interino de la Unidad, Sargento Víctor Rivera Colón ("Rivera Colón"), lo refirió a la División de Personal. Posteriormente, el Director de la Unidad envió un memorando al Negociado de Recursos Humanos ("Negociado") con un listado de las funciones, deberes y responsabilidades que Díaz tenía a su cargo en la Unidad. Además, indicó las funciones que Díaz realizaría al reintegrarse al Cuerpo de la Policía en calidad de Encargado de Cuarto de Evidencia y Armas y Servicio de Retén.
El 23 de marzo de 1999, el Sr. Pablo Rodríguez Guzmán, Director del Negociado, solicitó al Superintendente de la Policía, Ledo. Pedro A. Toledo ("Superintendente"), que sometiera a Díaz a una evaluación médica para determinar si su condición le permitía o no realizar las funciones esenciales correspondiente al rango de Agente de la Policía con o sin acomodo. Así las cosas, el 4 de mayo de 1999, la Dra. Lourdes I. González Díaz, Directora de la División Médica de la Policía, rindió su informe de evaluación. En el mismo indicó que todas y cada una de las funciones requeridas para el nuevo puesto podrían llevarse a cabo por Díaz, ya que, aun con la prótesis temporera, éste las podía realizar e, incluso, excedía las expectativas. 
Díaz, además, tomó varios exámenes para ser considerado para otros puestos dentro de la Policía. La Sra. María M. Rivera Rodríguez, Directora de la División de Reclutamiento, le informó a Díaz que, luego de una evaluación de su preparación académica y experiencia, habían determinado que cualificaba para los puestos de: Radio I y II, Oficinista I y II, Guardalmacén I y II, Telefonista I, II y III. No obstante, nunca se le reubicó en alguno de estos puestos ni se le proveyó un acomodo razonable.
Durante el proceso encaminado a considerar su petición de reinstalación y acomodo razonable, a Díaz se le requirió agotar toda licencia disponible. Inclusive, ante la necesidad de días adicionales, algunos compañeros de trabajo le cedieron por un breve término días de licencia acumuladas.
No empece a todas las recomendaciones brindadas para que se le diera un acomodo razonable a Díaz, el Superintendente le envió un memorando a éste informándole que los exámenes médicos demostraban que estaba *740 incapacitado para desempeñar sus deberes y le informó su intención de cesantearlo. La cesantía fue efectiva el 18 de enero de 2000. El 15 de marzo de 2000, Díaz presentó Apelación ante J.A.S.A.P. de la decisión del Superintendente.
Mientras tanto, Díaz se vio en la obligación de buscar otros empleos. Trabajó en el Municipio de Gurabo como Supervisor de Guardias Escolares desde julio de 2000 a enero de 2001, en el cual devengaba $8.66 por hora. Posteriormente, en febrero de 2002, Díaz obtuvo trabajo en Saldaña y Asociados como Oficinista de Archivo devengado $6.50 por hora. Sus funciones como Supervisor de Guardias Escolares fueron evaluadas por el Dr. Pérez, quien también concluyó que Díaz podía realizar su labor de Agente mediante un acomodo razonable.
Por otro lado, el 19 de septiembre de 2000, Díaz también acudió al foro judicial mediante la presentación de una Demanda al amparo de la Ley Núm. 44 de 2 de julio de 1985, según enmendada ("Ley de Impedidos"). Argumentó haber sido despedido ilegalmente de la Policía en violación a la Ley de Impedidos. Solicitó su reinstalación a la Policía y, además, reclamó daños morales, angustias mentales y daños económicos, entre éstos, salarios dejados de devengar por concepto de paga atrasada ("backpay") y paga adelantada ("frontpay").
Por su parte, el 8 de diciembre de 2000, J.A.S.A.P. emitió una Resolución dejando sin efecto la cesantía de Díaz y ordenando su reinstalación. El fundamento para su decisión fue la Ley Núm. 45 de 18 de abril de 1935 sobre Compensaciones por Accidentes en el Trabajo. Por entender que la decisión era incorrecta en derecho, el 2 de enero de 2001, el E.L.A. presentó un escrito de revisión ante este Tribunal. Luego de expedir el recurso, otro panel de este Tribunal emitió Sentencia revocando la Resolución de J.A.S.A.P. y, por consiguiente, dejó sin efecto la determinación de reinstalación de Díaz a su puesto. No conforme con tal determinación, el 17 de julio de 2001, Díaz presentó una "Moción de Reconsideración", la cual fue declarada No Ha Lugar por este Tribunal, el 31 de enero de 2003. 
El 30 de enero de 2002, el E.L.A. presentó ante el TPI una "Moción en Solicitud de Desestimación" en la que alegó falta de jurisdicción de ese tribunal. Argumentó que el demandante debió acudir primeramente ante la consideración de la Oficina del Procurador de Personas con Impedimento (O.P.P.I.), en vista de que, alegadamente, es el foro administrativo con jurisdicción primaria en los casos de discrimen contra personas con impedimentos. Además, alegó la existencia de una sentencia de este Tribunal revocando la Resolución de J.A.S. A.P., lo que, según el E.L.A., constituye un impedimento colateral por sentencia.
Posteriormente, el 4 de febrero de 2002, Díaz se opuso a la "Moción de Desestimación" bajo el fundamento de que el E.L.A. se encontraba en rebeldía. Añadió que, distinto a lo alegado por ésta, la Ley de Impedidos, supra, no requería el agotamiento de remedios administrativos. El E.L.A., por su parte, presentó una "Moción en Apoyo a Solicitud de Desestimación".
Así las cosas, el 15 de octubre de 2002, el TPI emitió Resolución declarando No Ha Lugar la solicitud de desestimación presentada por el E.L.A. En primer lugar, expresó que O.P.P.I. no tiene jurisdicción primaria exclusiva sobre acciones de discrimen por impedimento al amparo de la Ley Núm. 44, supra, y que las mismas pueden verse alternativamente, tanto en el foro administrativo como en el judicial. Además, ante la alegación de impedimento colateral por sentencia, el TPI concluyó que en este caso no se cumplían los requisitos de la doctrina, toda vez que los hechos esenciales dilucidados en las reclamaciones presentadas ante J.A.S.A.P. y ante este Tribunal eran distintos.
En consecuencia, el 6 de noviembre de 2002, notificada el 5 de diciembre de 2002, el TPI emitió Sentencia a favor de Díaz concediendo los siguientes remedios: 1) la reinstalación del demandante a su puesto de Agente; 2) la imposición de doble penalidad al amparo de la Ley Núm. 100 de 30 de junio de 1959; 3) la imposición de la cantidad de $60,000.00 por concepto de daños emocionales y mentales; 4) el pago de $59,920.00, más los aumentos de los que haya sido objeto el puesto de Agente que ocupaba Díaz, por concepto de "back-pay"; 5) el
*741 pago de $552.00 mensuales por concepto de "front-pay".
Oportunamente, Díaz presentó una "Moción de Reconsideración" y una "Solicitud de Determinaciones Adicionales de Hechos y Conclusiones de Derecho" en las cuales solicitó al TPI reconociera su derecho al pago de honorarios de abogado al amparo de la Ley de Impedidos. Su solicitud fue declarada Con Lugar el 14 de enero de 2003 y notificada el 20 de febrero de ese mismo mes y año. 
Inconforme con la decisión del TPI, el E.L.A. recurre ante nos mediante recurso de Apelación, en el que alegó la comisión de los siguientes errores:

“1) El tribunal de instancia estaba impedido de ordenar la reinstalación del demandante a su puesto de agente a la luz de la Sentencia emitida por este tribunal revocando la Resolución de J.A.S.A.P. a estos efectos. Por consiguiente, tampoco procede la imposición del pago de $57,920.00 por concepto de "back-pay" y de $552.00 mensuales por concepto de "front-pay".

2) El E.L.A. no es ‘patrono’ para fines de la sección 151 de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P. R.A. see. 146 et seq; por tanto, el tribunal de instancia estaba impedido por ley de imponer al E.L.A. el pago de la doble penalidad.

3) La cuantía concedida por el tribunal de instancia por concepto de los daños emocionales y mentales alegadamente sufridos por el demandante es exageradamente alta e irrazonable. ”

II
La doctrina de la ley del caso establece que los planteamientos que han sido objetos de adjudicación por el foro de instancia, por este Tribunal y/o por el Tribunal Supremo, no podrán ser reexaminados porque los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, gozan de las características de finalidad y firmeza. Management Administration Services Corp. v. E.L.A., 2000 J.T.S. 189, Opinión de 29 de diciembre de 2000, a la pág. 439; In Re: Tormos Blandino, 135 D.P.R. 573, 578 (1994); U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448, 468 (1989); Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 704 (1987).
Sin embargo, el Tribunal Supremo ha indicado que esta doctrina "no es férrea ni de aplicación absoluta", Noriega v. Gobernador, 130 D.P.R. 919, 931 (1992), ya que en Puerto Rico rige el Código Civil y, por lo tanto, no existe fundamento válido para la aplicación al modo angloamericano de la ley del caso. Banco Bilbao Vizcaya de P.R. v. Municipio de Vega Baja, 2001 J.T.S. 63, Opinión de 27 de abril de 2001, a la pág. 1188; Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 754-755 (1992). "También se reconoce que si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, el Tribunal puede aplicar una norma de derecho diferente a fin de resolver en forma justa." Banco Bilbao Vizcaya de P.R. v. Municipio de Vega Baja, supra, a la pág. 1188; Don Quixote Hotel v. Tribunal Superior, 100 D.P.R. 19, 29-30 (1971).
III
Por su parte, la doctrina de cosa juzgada persigue el propósito de proteger a los litigantes de las molestias que supone litigar en repetidas ocasiones la misma controversia, promover la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes. Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 218-219 (1992); Vázquez v. A.R.P.E., 128 D.P.R. 513, 535 (1991); Pagan Hernández v. U.P.R., 107 D.P.R. 720, 732 (1978). El efecto de la doctrina de cosa juzgada es evitar que en un pleito posterior sean litigadas cuestiones que ya fueron o que pudieron haber sido litigadas y adjudicadas en un pleito anterior. Worldwide Food Dis., Inc. v. Colón, et al, 133 D.P.R. 827, 833 (1993); Rodríguez Rodríguez v. Colberg Comas, supra, a la pág. 219; Banco de la Vivienda v. Carlo Ortiz, 130 D.P.R. 730, 739 (1992); Pagán Hernández v. U.P.R., supra, a las págs. 732-733. De este modo, la aplicación de la doctrina de cosa juzgada presupone que entre el pleito ya resuelto, y aquél en el que es planteada dicha doctrina, acontezca identidad de cosas, causas, litigantes y la calidad *742 en que lo fueron. Worldwide Food Dis., Inc. v. Colón, et al, supra, a la pág. 834.
A tenor con la doctrina de cosa juzgada, en A & P Gen. Contractors v. Asoc. Cana, 110 D.P.R. 753, 758-761 (1981), el Tribunal Supremo evaluó la doctrina del impedimento colateral por sentencia. El impedimento colateral por sentencia es una modalidad de la defensa de cosa juzgada que consiste en alegar que un hecho esencial, o unos hechos esenciales, para el pronunciamiento de una sentencia ya ha sido adjudicado definitivamente en un primer litigio entre las partes. Fatach v. Triple S, Inc., 147 D.P.R. 882, 889 (1999); Acevedo v. Western Digital Caribe, Inc. 140 D.P.R. 452, 464 (1996); Pereira v. Hernández, 83 D.P.R. 160, 166 (1961). Además, el impedimento colateral por sentencia tiene dos modalidades: (a) defensiva, y (b) ofensiva. La modalidad defensiva es una defensa que el demandado plantea para impedir la litigación de un asunto ya planteado y perdido por el demandante en un pleito anterior frente a otra parte. La modalidad ofensiva es una defensa que el demandante plantea para impedir que el demandado vuelva a litigar aquellos asuntos previamente litigados y perdidos frente a otra parte.
IV
En su primer error, el apelante alega que el TPI, estaba impedido de ordenar la reinstalación del demandante a su puesto de agente a la luz de la Sentencia emitida por este Tribunal revocando la Resolución de J.A.S.A.P. No le asiste la razón. Veamos.
En el presente caso, no es de aplicación la doctrina de la ley del caso, ya que la decisión emitida por este Tribunal en los casos consolidados bajo José Velázquez Ortiz, et al v. Policía de Puerto Rico, revisando una Resolución de J.A.S.A.P., está fundamentada en unos planteamientos distintos a los presentados por Díaz en la Demanda ante el T.P.I. Los planteamientos que este Tribunal tuvo ante su consideración fueron evaluados bajo el palio de la Ley Núm. 45, supra. Luego de un análisis de la referida ley, otro panel de este Tribunal concluyó que los empleados querellantes no cumplían con los requisitos necesarios para que se configure el derecho del empleado a la reserva de empleo durante un período de doce (12) meses. La decisión de este Tribunal de revocar las resoluciones emitidas por J.A.S.A.P. fue hecha, a la luz de la ley de Compensaciones por Accidentes en el Trabajo, bajo la cual fueron presentadas las reclamaciones de los empleados. 
Por otro lado, en el caso ante el TPI los planteamientos esbozados por Díaz estuvieron basados, esencialmente, en la prohibición de discrimen contra personas con impedimentos al amparo de la Ley de Impedidos, supra. La decisión del tribunal a quo estuvo fundamentada en la falta del patrono en brindarle al demandante un acomodo razonable y en la falta de justificación de su despido en vista de que, tanto el Director de la Unidad, como el Director del Negociado de Recursos Humanos y la Directora de la División Médica, recomendaron la reubicación del empleado en otro puesto. En resumen, concluimos que los planteamientos adjudicados por los distintos foros no son los mismos, por lo que en este caso no aplica la doctrina de la Ley del Caso.
Por otro lado, tampoco procede la alegación del apelante de que en este caso es de aplicación la doctrina de impedimento colateral por sentencia, ya que los hechos adjudicados en el caso ante J.A.S.A.P., y los cuales fueron objeto de revisión por este Tribunal, son distintos a los adjudicados por el TPI. Tal y como expresáramos anteriormente, las reclamaciones ante la agencia administrativa estuvieron fundamentadas en el artículo 5(a) de la Ley Núm. 45, supra, mientras que la demanda presentada por Díaz ante el TPI fue hecha al amparo de la Ley de Impedidos, supra. Por lo tanto, aun cuando entre ambos casos existe identidad de cosas y de litigantes en la calidad en que lo fueron, no obstante, falta identidad en las causas, por lo que se hace forzoso concluir que en este caso no se cumple con los requisitos de la doctrina de impedimento colateral por sentencia.
Por consiguiente, concluimos que no erró el TPI al imponer al apelante el pago de $57,920.00 por concepto de "back-pay" y de $552.00 mensuales por "front-pay".
*743 y
En su segundo error, el apelante plantea que el TPI estaba impedido por ley de imponer al E.L.A. el pago de la doble penalidad, en vista de que, alegadamente, éste no es patrono para fines de la Ley Núm. 100, supra. Le asiste la razón. Veamos porqué.
La sección 151, Artículo 6 de la Ley Núm. 100, supra, dispone que, para fines de esa ley, el término patrono incluirá a "toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica. Incluirá aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas". (Enfasis nuestro.) De la lectura de este inciso, claramente surge que las agencias gubernamentales, como lo es la Policía de Puerto Rico, no caen dentro de la definición que provee la letra de ley.
Como muy bien han indicado ambas partes en sus escritos, el artículo 13 de la Ley de Impedidos, supra, incorporó a dicho estatuto los remedios, facultades y procedimientos establecidos en la Ley Núm. 100, supra. Por lo tanto, si bien es cierto que un reclamante que invoque la Ley de Impedidos, supra, tiene derecho a la concesión de los remedios provistos en la Ley Núm. 100, supra, no es menos cierto que los mismos serán concedidos bajo los términos y condiciones establecidos en esta última. Por lo tanto, en vista de que la Policía de Puerto Rico no es una agencia que opera como negocio privado, concluimos que en este caso no procedía la imposición de la doble penalidad a las partidas adjudicadas por el TPI al apelante en su Sentencia por concepto de responsabilidad civil. Coincidimos con la alegación del apelante en que, a diferencia del caso que nos ocupa, en el caso citado por el TPI en su Sentencia en apoyo de su decisión, García Pagan v. Shirley Laboratories, 122 D.P.R. 193 (1998), el demandado era una persona jurídica privada y no una agencia o instrumentalidad pública. Por los mismos fundamentos, concluimos que tampoco procede la imposición de honorarios de abogado. Así, pues, concluimos que incidió el TPI en el segundo error.
VI
En el tercer señalamiento de error, el E.L.A. aduce que la cuantía concedida por concepto de daños emocionales y mentales es exageradamente alta e irrazonable. Le asiste la razón. Veamos.
Los tribunales apelativos no deben intervenir con la estimación de daños que realicen los tribunales de primera instancia a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 178 (1996); Cotto Morales v. Ríos, 140 D.P.R. 604, 626 (1996). La norma vigente es que los tribunales de instancia están siempre en mejor posición que los tribunales apelativos para evaluar y conceder daños, toda vez que han tenido contacto directo con la prueba. Cotto Morales v. Ríos, supra, a la página 626; Rosado v. Supermercado Mr. Special, 139 D.P.R. 946, 954 (1996); Quiñones López v. Manzano Pozas, supra, a la pág. 178. Por tanto, la parte que solicita la modificación de las sumas concedidas a nivel de primera instancia, viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451-452(1985).
Con estos principios en mente, procedemos a evaluar la procedencia de la suma concedida en daños. El examen de la cuantía de $60,000.00 concedida como daños en este caso y la prueba de daños presentada por Díaz, nos convencen de que debemos reducir la misma. Dicha prueba se limitó a establecer que a consecuencia de su despido, Díaz sufrió severas pérdidas de ingresos y tuvo problemas económicos; que durante el año transcurrido entre su solicitud de reinstalación y su despido, Díaz estuvo en un limbo, en la expectativa legítima de regresar a su empleo sin devengar sueldo e impedido de emplearse; que lo obligaron a agotar sus Ucencias; que tuvo que aceptar trabajos de menor paga y que se vio frustrada su carrera en el servicio público.
Aun cuando el E.L.A. no nos proveyó la exposición narrativa del caso u otro documento que nos convenciera de la existencia de circunstancias que hicieran meritorio el que se modifique la cuantía concedida por el TPI por *744 concepto de daños y angustias mentales, de la propia Sentencia del tribunal a quo surge que la cantidad concedida es exageradamente alta. Como bien señaló el TPI en la Sentencia recurrida, Díaz superó su trauma sin necesidad de obtener ayuda psicológica o consejería. Además, su vida profesional no se vio totalmente limitada, pues con la ayuda de la prótesis, Díaz pudo normalizar su diario vivir. Tan es así que pudo conseguir dos trabajos, los cuales realizó con gran responsabilidad y eficiencia. De hecho, durante el juicio, Díaz tampoco presentó evidencia pericial alguna sobre los alegados daños emocionales o angustias mentales sufridas a consecuencia de su cesantía en la Policía. Ante este cuadro fáctico, este Tribunal ha evaluado los daños emocionales sufridos por Díaz, como consecuencia de la pérdida de su empleo, en la cantidad de $15,000.00.
VII
Por los fundamentos antes expuestos, se confirma, en parte, la Sentencia apelada y se modifica para efectos de eliminar la imposición de la doble penalidad y los honorarios de abogado al amparo de la Ley Núm. 100, supra, y reducir la cuantía por concepto de daños y angustias mentales a la cantidad de $15,000.00. En resumen, el Sr. Díaz tendrá derecho a: 1) la reinstalación a su puesto de Agente o a ser reubicado en otro puesto, para el cual cualifique dentro de la Policía; 2) al pago de $59,920.00 por concepto de "back-pay" (más los aumentos que haya tenido su plaza durante su ausencia); 3) al pago de $552.00 mensuales por concepto de "front-pay"; 4) $15,000.00 por concepto de daños y angustias mentales, y 5) las costas incurridas e intereses post-sentencia a la tasa legal aplicable a la fecha del TPI emitir sentencia.
El Juez Rodríguez Muñiz disiente sin opinión escrita.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 13
1. Según surge de la página 13 de la Sentencia del TPI, a la página 14 del Apéndice.
2.1 L.P.R.A. 501 et seq., conocida como "Ley de Impedidos de Puerto Rico".
3.11 L.P.R.A. sec. 1 et seq.
4. El 24 de febrero de 2003, Díaz presentó el recurso de Certiorari Núm. CC 2003-0124 ante el Tribunal Supremo de Puerto Rico solicitando la revisión de la decisión del 31 de enero de 2003. El 25 de abril de 2003, ese tribunal denegó la expedición del mismo.
5. 29 L.P.R.A. see. 146, conocida como "Ley de Discrimen en el Empleo".
6. El artículo 13 de la Ley Núm. 44, supra, incorporó en dicho estatuto los remedios, facultades y procedimientos establecidos en la Ley Núm. 100, supra. Véase, a estos efectos, Rivera Flores v. Cia. ABC, 138 D.P.R. 1, 5 (1995).
7. El 6 de marzo de 2003, notificada el día 11 de ese mismo mes y año, el TPI emitió una "Resolución Enmendada Nunc Pro Tun” para enmendar la Sentencia emitida el 6 de noviembre de 2002, a los efectos de incluir, entre los remedios concedidos a Díaz, una partida de un 25% del total de compensación para honorarios de abogado.
8. En síntesis, este Tribunal resolvió que bajo las disposiciones de la Ley Núm. 44, supra, los agentes de la Policía están sujetos a la garantía de reserva de empleo hasta doce (12) meses, cuyo término es de caducidad. 11 L.P.R.A. sec. 7.
9. Refiérase a la página 29 de la Sentencia del TPI, página 30 del Apéndice.
10. Este Tribunal se encuentra en igual posición que el TPI para apreciar la prueba documental que forma parte del *745 expediente del caso. Caribbean Petroleum Co. v. Depto. de Hacienda, 134 D.P.R. 861, 880 (1993); Díaz García v. Aponte Aponte, 125 D.P.R. 1, 13-14 (1989); Ortiz v. Cruz Pagán, 103 D.P.R. 939, 947-948 (1975).